**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JEWELLEAN MOORE** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:16-cv-03362-M-BN** |
| | § | |
| **LANCASTER REGIONAL HOSPITAL, L.P.** | § | |
| **d/b/a CRESCENT MEDICAL CENTER** | § | |
| **LANCASTER** | § | |
| | § | |
| **Defendant.** | § | |

---

**APPENDIX TO DEFENDANT LANCASTER REGIONAL HOSPITAL, L.P. D/B/A
CRESCENT MEDICAL CENTER'S RESPONSE TO PLAINTIFF'S
REQUEST FOR DEFAULT JUDGMENT AND STAY OF THE IN-PERSON
GUARDIAN AD LITEM HEARING PENDING DE NOVO REVIEW**

---

Plaintiff's Request for Default Judgment and Stay of the In-Person Guardian Ad Litem Hearing/Pending De Novo Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Order Setting Briefing Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Email correspondence between pro se Plaintiff Jewellean Moore and Attorney Monica Bailey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Civil Docket for Case No. 3:16-CV-03362-M-BN . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Links Paratransit Service Physician Verification of Disability Form . . . . . . . . . . . . . . . 32

Deposition of pro se Plaintiff Jewellean Moore . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS        DIVISION

JEWELLEAN MOORE, PLAINTIF,

VS.                                        CASE # 3:16cv 3362

CRESCENT MEDICAL CENTER, DEF., ET AL.


PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT

AND STAY OF THE IN-PERSON-GUARDIAN AD LITEM

HEARING/PENDING DE NOVO REVIEW

Comes Now the Plaintiff, Jewellean Moore, pursuant to Rules 11( c ) (1 ); 37(b); 55; and

60(6), FRCP, Request Sanctions of Default Judgment , and Stay of the In-Person Hearing for

May, 02, 2017. This Court's inherent Power to Stay these Proceedings in the furtherance of the

Fair and Efficient Administration of Justice, Landis V. N. AM., Co., 299 U.S. 248, 249, 254 (1936).


REQUEST FOR DEFAULT JUDGMENT:

1). The Defendants were Ordered on March 8, 2017, to Respond to Plaintiff's Amended Complaint by

April 7, 2017. The Defendants have failed to respond or otherwise plead. To make clear, the Court

Should determine whether the Original or Amended Complaint are now at issue. Also, the Court

Should not allow the Defendants defend against use of the Amended Complaint, or enter default

Judgment against the Defendants.

STAY OF THE IN-PERSON-GUARDIAN AD LITEM HEARING

PENDING DE NOVO REVIEW

2). The Magistrate's Order of April 18, 2017, is clearly errouneous and contrary to law. The Order

Requires Plaintiff to Travel more than 626 miles for what should have been a pro forma process.

(1)

The Order states, "during the April 18, 2017, phone Conference, it became apparent that in-person-Hearing on Ms. Moore Request is necessary ". This is incompatible with Plaintiff's Doctor's opinion.

There exist no evidentiary facts to support the lack of Appointment of a Friend of Court Appointment Of Ms. Moore's Domestic Partner by the Court sua sponte. Plaintiff's Doctor's assessment of Plaintiff's Disabilities should have been a coup de gras blow to the opposition. The Magistrate failed to issue any Order that protects the Plaintiff's interest, despite Dr. Jayakrishanan Deepa's Verification of disabilities Attached to Plaintiff's request for Guardian ad litem/Friend of the Court Appointment.

The Federal Rules, 52(a)(3), and 72(a), Requires the Magistrate rely on factual evidence . there is Nothing in the records which diminishes Plaintiff's evidence of Mental Disability. In fact, the Magistrate Has failed to disclose the sudden epiphany that could not be handled by contemporaneous transmission From different location, pursuant to Rule 43, FRCP.

The Magistrate's order at this juncture is a burdening hardship, and exceeds what is necessary for Appointment of a Friend of Court or Guardian ad litem.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAY THIS COURT STAY THE IN-PERSON-GUARDIAN AD LITEM HEARING; IMPOSE SANTIONS OR DEFAULT AGAINST THE DEFENDANTS FOR VIOLATIG COURT ORDER NO. 30. ALTERNATIVELY, DE NOVO REVIEW.

*Jewellean Moore* _____. Dated this_____24th  day of April, 2017.

Jewellean Moore

### CERTIFICATE OF CONFERENCE

I, Jewellean Moore, certify that Monica Bailey, has made communications difficult, nevertheless, She was Notified by email. Counsel is aware of Plaintiff's Partner preparing documents, yet She Makes unwarranted remarks to impede the process of a conference.

I swear the foregoing statements are true and correct.

*Jewellean Moore* .

Jewellean Moore

(2)

CERTIFICATE OF SERVICE:

I, Jewellean Moore, certify that a copy of the foregoing Default Judgment/Request for Stay, is

Hereby mailed to: Monica Bailey, Attorney for Defendants this 24th day of April, 2017, by U.S. Mail,

Postage prepaid.

I Swear the foregoing statements are true and correct.

*Jewellean Moore.*

Jewellean Moore

6200 Colonel Glenn Rd #219

Little Rock, AR. 72204

(3)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JEWELLEAN MOORE,               §
                               §
              Plaintiff,       §
                               §
V.                             §          No. 3:16-cv-3362-M-BN
                               §
CRESCENT MEDICAL CENTER,       §
ET AL.,                        §
                               §
              Defendants.      §

## ORDER SETTING BRIEFING SCHEDULE

This *pro se* action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

Plaintiff Jewellean Moore has filed a motion for leave to amend her complaint and seeks leave to join an additional defendant. *See* Dkt. No. 29.

Defendant Lancaster Regional Hospital, L.P. d/b/a Crescent Medical Center Lancaster (identified by Plaintiff as Crescent Medical Center) shall file a written response to the motion by **April 7, 2017**. The response must be accompanied by or incorporate a brief, and the response and the brief shall not together exceed 30 pages in length, excluding any table of contents and table of authorities.

Plaintiff may file a reply brief, but no additional documents, by **April 24, 2017**. The reply shall not exceed 15 pages in length. No supplemental pleadings, briefs, or evidence or other documents may be filed in connection with the motion to dismiss or

-1-

response thereto without leave of court.

Because Plaintiff is proceeding *pro se*, the Court sets out the following legal standards applicable (or potentially applicable) to the motion:

When the party is not subject to an expired deadline for seeking leave to amend, *see* Dkt. No. 25, ¶¶ 2 & 3, Federal Rule of Civil Procedure 15(a) requires that leave to amend be granted freely "when justice so requires," FED. R. CIV. P. 15(a)(2). That is, Rule 15(a) provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

Thus, while leave to amend is not automatic, *see Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," *Dussouy*, 660 F.2d at 598.

The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted

-2-

liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

Therefore, a court may "refuse leave to amend if ... the complaint as amended would be subject to dismissal," *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 208 (5th Cir. 2009); internal quotation marks omitted); *see also Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (While "the language of [Rule 15(a)] 'evinces a bias in favor of granting leave to amend,' ... a district court need not grant a futile motion to amend." (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (in turn quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982)); citation omitted)); *cf. Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) ("When an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,' it is not an abuse of discretion to deny the motion'" for leave to amend. (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014))).

Because the Court's futility analysis parallels an analysis of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the undersigned notes that "[u]nder that standard, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' [And a] claim is facially plausible if the complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (in turn quoting

-3-

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); internal quotation marks omitted)); *see also Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) ("[T]o survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle him or her to relief. (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e))).

The United States "Supreme Court has made clear that" dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson*, 135 S. Ct. at 347; emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

The deadlines set forth in this order will not be modified except upon written motion for good cause shown.

Further, the Court strongly discourages any request to extend either of these deadlines through a motion that is filed within three business days of the existing deadline and will grant any such motion only upon a showing in the written motion of extraordinary circumstances.

-4-

The Court intends to rule on the motion based on the parties' written submissions, without hearing oral argument. *See* N.D. TEX. L. CIV. R. 7.1(g) ("Unless otherwise directed by the presiding judge, oral argument on a motion will not be held."). But the Court, in its discretion or on the request of any party, may schedule oral argument prior to ruling on the motion. Any party who desires oral argument must file a written request with the Court by **April 24, 2017.**

If, while the motion is pending, the parties are having serious discussions that might make it unnecessary for the Court to rule on the motion, the parties must immediately advise Shakira Todd in the district clerk's office, at (214) 753-2165, that such discussions are ongoing.

Please note that deadlines in this order are for filing or delivery and are not mailing dates.

SO ORDERED.

DATED: March 8, 2017

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Thursday, April 27, 2017 8:08 AM |
| **To:** | Bailey, Monica |
| **Subject:** | Re: Contacting Represented Parties |

Ms Bailey. I am sorry to inform You that Paralegals, Investigators, And private investigators can and will be investigating issues as they see fit. Private Citizens can also.the real concern is your concealing Your Clients colorful past as the reasons for their name change. So stay tune.

On Apr 26, 2017 12:28 PM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:

Ms. Moore,

It has come to our attention that you are contacting our client, Hudson Insurance Group, through Mr. Carson in order to obtain information about insurance coverage for Crescent Medical Center. Ms. Moore, the Court has already explained to you in very clear terms: Mr. Carson may not assist you with this case, which includes contacting our client demanding information about coverage or any other matter.

Ms. Moore, even a pro se plaintiff is prohibited from contacting any party represented by counsel. Hudson Insurance group will not answer any of your questions, neither will Crescent Medical Center. **You will cease from contacting our clients - either directly or through the assistance of Mr. Carson - effective IMMEDIATELY.**

If you have any questions you may call me to discuss.

Sincerely,

**Monica Rey Bailey**

Associate Attorney

Schell Cooley LLP

15455 Dallas Parkway, Suite 550

Addison, Texas 75001

PHONE: 214-665-2000

FAX: 214-754-0060

Email: mbailey@schellcooley.com

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Tuesday, April 25, 2017 8:04 AM |
| **To:** | Bailey, Monica |
| **Subject:** | Moore v. Crescent |

We will ask the Court to strike Your Notice of Defendants position regarding Plaintiff's Amended Complaint as violating the Courts standing order of 12/29/17.

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Monday, April 24, 2017 8:18 AM |
| **To:** | Bailey, Monica |
| **Subject:** | Moore V. Crescent Medical et al |
| **Attachments:** | IN THE UNITED STATES DISTRICT COURT-2.docx |

I am today mailing to you a copy of My " Motion for default judgment ", for failure to respond to my amended complaint ,due April 7.

  Also, attached is My Request "For de novo review and objection to the Magistrates 4/18/2017, Order".
Thanks, JM.

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Saturday, April 22, 2017 10:45 AM |
| **To:** | Bailey, Monica |
| **Subject:** | Re: Moore v. Crescent med. |

If this Magistrate allows your reasoning to prevail, hello united states Supreme Court, We are prepared Ms Bailey to go the Distance.

On Apr 22, 2017 10:41 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:
No Ms. Moore it wasn't. If there was a default judgment there would be no need for a hearing to determine your guardianship. You are incorrect.

I find it interesting you were unable to answer the most basic questions regarding your case during the phone call with the Judge and yet you are claiming to understand the rules regarding default judgment.

Thank you for providing us clarity regarding whether you are, in fact, capable of adjudicating your own claim.

Sincerely,

Monica R Bailey

Sent from my iPhone

On Apr 22, 2017, at 10:35 AM, Jewellean Moore <jewellean61@gmail.com> wrote:

> I can not waste my time reading you Court document number 30. Answer was Ordered.
> Good day.
>
> On Apr 22, 2017 10:32 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:
> Ms. Moore,
>
> The Court has to first grant leave on your motion to amend. We didn't object to your motion for leave. That is not the same as not answering your amended complaint IF the Court grants leave. He hasn't issued any ruling on it yet.
>
> Sent from my iPhone
>
> On Apr 22, 2017, at 10:30 AM, Jewellean Moore <jewellean61@gmail.com> wrote:
>
>> You will
>>
>> On Apr 22, 2017 10:28 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:
>> Ms. Moore I have no idea what you are referring to in your email.
>>
>> Sent from my iPhone

On Apr 22, 2017, at 10:27 AM, Jewellean Moore <jewellean61@gmail.com>
wrote:

> Notice of Default Judgement, and hearing request witin 7 days on
> Plaintiff's Amended complaint. Answer were due April 7, 2017.
> Thanks.

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Saturday, April 22, 2017 10:36 AM |
| **To:** | Bailey, Monica |
| **Subject:** | Re: Moore v. Crescent med. |

I can not waste my time reading you Court document number 30. Answer was Ordered.
Good day.

On Apr 22, 2017 10:32 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:
Ms. Moore,

The Court has to first grant leave on your motion to amend. We didn't object to your motion for leave. That is not the same as not answering your amended complaint IF the Court grants leave. He hasn't issued any ruling on it yet.

Sent from my iPhone

On Apr 22, 2017, at 10:30 AM, Jewellean Moore <jewellean61@gmail.com> wrote:

> You will
>
> On Apr 22, 2017 10:28 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:
> Ms. Moore I have no idea what you are referring to in your email.
>
> Sent from my iPhone
>
> On Apr 22, 2017, at 10:27 AM, Jewellean Moore <jewellean61@gmail.com> wrote:
>
> > Notice of Default Judgement, and hearing request witin 7 days on Plaintiff's Amended complaint. Answer were due April 7, 2017.
> > Thanks.

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Monday, April 17, 2017 11:00 AM |
| **To:** | Bailey, Monica |
| **Subject:** | RE: Court Ordered Telephone Conference on Tuesday at 3:00 pm |

You and that attitude will get nowhere. Ms Moore is unable to utilize emails. So put it in the mail so someone can help Her. You are a charlatan. Why do you think She is asking for help. Art Carson

On Apr 17, 2017 10:54 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:

Ms. Moore,

I will not expend my client's resources explaining the Orders to you. You are responsible to read them and follow the directions from the Court via ALL the various Orders.

As it stands, both parties are ordered to confer with Judge Horan and Defendant will comply with the order and attend the phone conference.

Sincerely,

**Monica Rey Bailey**

Associate Attorney

Schell Cooley LLP

15455 Dallas Parkway, Suite 550

Addison, Texas 75001

PHONE: 214-665-2000

FAX: 214-754-0060

Email: mbailey@schellcooley.com

**From:** Jewellean Moore [mailto:jewellean61@gmail.com]
**Sent:** Monday, April 17, 2017 10:45 AM
**To:** Bailey, Monica
**Subject:** Re: Court Ordered Telephone Conference on Tuesday at 3:00 pm

According to pacer i have been advised the guardian ad litem motion has not been docketed. The motion were mailed by certified mail, and the post office indicated problems in delivery. So without my motion and exhibit from My Doctor, you are premature.

On Apr 17, 2017 9:32 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:

Ms. Moore,

Please see the correspondence from the Court below. We are ordered to have a telephone conference with Judge Horan tomorrow – Tuesday – at 3:00p.m. to discuss your request for a Guardian at Litem.

I will be calling from my office number 214-665-2018.

What number shall I tell the Court to call you?

**Monica Rey Bailey**

Associate Attorney

Schell Cooley LLP

15455 Dallas Parkway, Suite 550

Addison, Texas 75001

PHONE: 214-665-2000

FAX: 214-754-0060

Email: mbailey@schellcooley.com

2

17

**Notice of Electronic Filing**

The following transaction was entered on 4/17/2017 at 9:07 AM CDT and filed on 4/17/2017

| | |
|---|---|
| **Case Name:** | Moore v. Crescent Medical Center et al |
| **Case Number:** | 3:16-cv-03362-M-BN |
| **Filer:** | |
| **Document Number:** | 43(No document attached) |

**Docket Text:**
**ELECTRONIC ORDER: The Court's staff received a telephone call from Defendant's counsel asking the Court to schedule a telephone conference regarding Ms. Moore requesting a Guardian Ad Litem be appointed to her case. Telephone Conference set for 4/18/2017 03:00 PM before Magistrate Judge David L. Horan. Defendant's counsel are ordered to circulate a dial-in number for this telephone conference to the Court (at Horan_Orders@txnd.uscourts.gov) and to Plaintiff by 5:00 p.m. Central Time on April 17, 2017. (Ordered by Magistrate Judge David L. Horan on 4/17/2017) (mcrd)**

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Saturday, April 15, 2017 10:14 AM |
| **To:** | Bailey, Monica |
| **Subject:** | RE: Moore v. Crescent med |

Sorry to disturb you, but I am cancelling any telephone conferences with the Judge until a joint status report is filed.
Thanks

On Apr 14, 2017 12:36 PM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:

Ms. Moore,


Very good. I have left a message with the court clerk. She may be out for Good Friday. I will let you know if the dates you've given will work for Judge Horan as soon as I hear from her.


Enjoy your Easter weekend.



**Monica Rey Bailey**

Associate Attorney

Schell Cooley LLP

15455 Dallas Parkway, Suite 550

Addison, Texas 75001

PHONE: 214-665-2000

FAX: 214-754-0060

Email: mbailey@schellcooley.com

1

**From:** Jewellean Moore [mailto:jewellean61@gmail.com]
**Sent:** Friday, April 14, 2017 12:29 PM
**To:** Bailey, Monica
**Subject:** Moore v. Crescent med


Anytime on the 17-18th of april, 9:00 Am-4:00 would be fine.

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Monday, April 10, 2017 9:55 AM |
| **To:** | Bailey, Monica |
| **Subject:** | RE: Moore v. Crescent et al |

Tomorrow is fine, thanks

On Apr 10, 2017 9:44 AM, "Bailey, Monica" <mbailey@schellcooley.com> wrote:

Good morning Ms. Moore,

I am not sure what the requirements are for a proceeding to appoint a guardian ad litem in federal court. A conversation today would not be productive since I will need some time to research the topic. Can we plan to discuss tomorrow?

You can call me anytime between 9:30 and 5:30 at 214-665-2018.

Sincerely,

**Monica Rey Bailey**

Associate Attorney

Schell Cooley LLP

15455 Dallas Parkway, Suite 550

Addison, Texas 75001

PHONE: 214-665-2000

FAX: 214-754-0060

Email: mbailey@schellcooley.com

**From:** Jewellean Moore [mailto:jewellean61@gmail.com]
**Sent:** Monday, April 10, 2017 8:09 AM
**To:** Bailey, Monica
**Subject:** Moore v. Crescent et al


Ms Bailey, I will need to confer with you over the phone. Since Mr Carson will no longer email for me, and I am unable to do so.therefore i will need a Guardian ad litem due to My Mental disabilities. I need some type of accomodation in accordance with the American Disability Act, to have access to Court.
Thanks

**Bailey, Monica**

| | |
|---|---|
| **From:** | Jewellean Moore [jewellean61@gmail.com] |
| **Sent:** | Monday, April 10, 2017 8:09 AM |
| **To:** | Bailey, Monica |
| **Subject:** | Moore v. Crescent et al |

Ms Bailey, I will need to confer with you over the phone. Since Mr Carson will no longer email for me, and I am unable to do so.therefore i will need a Guardian ad litem due to My Mental disabilities. I need some type of accomodation in accordance with the American Disability Act, to have access to Court.
Thanks

CASREF,IFP,JURY

# U.S. District Court
## Northern District of Texas (Dallas)
### CIVIL DOCKET FOR CASE #: 3:16-cv-03362-M-BN

Moore v. Crescent Medical Center et al
Assigned to: Chief Judge Barbara M.G. Lynn
Referred to: Magistrate Judge David L. Horan
Case in other court: Arkansas Eastern, 4:16-cv-00845
Cause: 28:1332 Diversity-Medical Malpractice

Date Filed: 12/05/2016
Jury Demand: Both
Nature of Suit: 362 Torts/Pers Inj: Personal
Injury - Medical Malpractice
Jurisdiction: Diversity

**Plaintiff**

**Jewellean Moore**                 represented by **Jewellean Moore**
6200 Colonel Glenn Road #219
Little Rock, AR 72204
501-240-2422
PRO SE

V.

**Defendant**

**Crescent Medical Center**         represented by **Russell W Schell**
Schell Cooley LLP
15455 Dallas Parkway
Suite 550
Addison, TX 75001
214-665-2020
Fax: 214-754-0060
Email: rschell@schellcooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Casey Cole Campbell**
Schell Cooley LLP
15455 Dallas Parkway
Suite 550
Addison, TX 75001
214-665-2000
Fax: 214-754-0060
Email: ccampbell@schellcooley.com
*ATTORNEY TO BE NOTICED*

Bar Status: Admitted/In Good Standing

**Monica Rey Bailey**
Schell Cooley LLP
15455 Dallas Parkway
Suite 550
Addison, TX 75001
214-665-2000
Fax: 214-754-0060
Email: mbailey@schellcooley.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Emanuel Rafael**
*Dr.*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/17/2016 | 1 | MOTION for Leave to Proceed in forma pauperis filed by Jewellean Moore. (rhm) [Transferred from Arkansas Eastern on 12/5/2016.] (Entered: 11/17/2016) |
| 11/17/2016 | 2 | COMPLAINT with Jury Demand filed by Jewellean Moore against all Defendants. (rhm) (Docket text modified on 11/18/2016 to include a reference to the Jury Demand.) (thd). [Transferred from Arkansas Eastern on 12/5/2016.] (Main Document 2 replaced on 2/8/2017) (axm). (Additional attachment(s) added on 2/8/2017: # 1 Document Restricted - Exhibit(s)) (axm). Modified restriction level of pages 5-9 on 2/8/2017 per 23 Order. (axm). (Entered: 11/17/2016) |
| 11/18/2016 |  | NOTICE OF DOCKET CORRECTION re: 2 Complaint. CORRECTION: The docket text was modified to include a reference to the Jury Demand. (thd) [Transferred from Arkansas Eastern on 12/5/2016.] (Entered: 11/18/2016) |
| 12/05/2016 | 3 | ORDER directing the Clerk of the Court to immediately transfer this case to the United States District Court for the Northern District of Texas, Dallas Division. Signed by Judge Billy Roy Wilson on 12/05/2016. (rhm) [Transferred from Arkansas Eastern on 12/5/2016.] (Entered: 12/05/2016) |
| 12/05/2016 | 4 | Case electronically transferred in from District of Arkansas Eastern; Case Number 4:16-cv-00845. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas should seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. Copy of NEF to be sent US Mail to parties not electronically noticed. (Entered: 12/05/2016) |
| 12/05/2016 | 5 | New Case Notes: A filing fee has not been paid. CASREF case referral set and case |

| | | referred to Magistrate Judge Horan (see Special Order 3). Case received over counter/electronically. No prior sanctions found. (For court use only - links to the national and circuit indexes.) Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Horan). Clerk to provide copy to plaintiff if not received electronically. Motion(s) referred to Magistrate Judge David L Horan. (aaa) (Entered: 12/05/2016) |
|---|---|---|
| 12/05/2016 | 6 | Notice and Instruction to Pro Se Party. (aaa) (Entered: 12/05/2016) |
| 12/05/2016 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:5,6. Mon Dec 5 14:58:41 CST 2016 (crt) (Entered: 12/05/2016) |
| 12/06/2016 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:3. Tue Dec 6 12:16:53 CST 2016 (crt) (Entered: 12/06/2016) |
| 12/06/2016 | 7 | ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS, SPECIFYING FURTHER ACTION TO BE TAKEN BY THE CLERK, AND REQUIRING SERVICE BY THE MARSHAL: Clerk of the Court shall mail a copy of this order to Plaintiff and issue summons, and the United States Marshal shall serve process on the following defendants. Re: 1 Motion for Leave to Proceed In Forma Pauperis. (Ordered by Magistrate Judge David L Horan on 12/6/2016) (epm) (Entered: 12/07/2016) |
| 12/07/2016 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:7. Wed Dec 7 09:15:30 CST 2016 (crt) (Entered: 12/07/2016) |
| 12/07/2016 | 8 | Summons Issued as to Cresent Medical Center, Emanuel Rafael. (epm) (Entered: 12/07/2016) |
| 12/07/2016 | 9 | Business Reply Card signed by USMS; re 8 Summons Issued, 7 Order on Motion for Leave to Proceed in Forma Pauperis, 2 Complaint. Signed on 12/7/2016. (epm) (Entered: 12/07/2016) |
| 12/28/2016 | 10 | ANSWER to 2 Complaint with Jury Demand filed by Cresent Medical Center. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. Attorney Russell W Schell added to party Cresent Medical Center(pty:dft) (Schell, Russell) (Entered: 12/28/2016) |
| 12/29/2016 | 11 | ORDER DIRECTING FILING OF JOINT STATUS REPORT: Joint Status Report due by 1/13/2017. (Ordered by Magistrate Judge David L Horan on 12/29/2016) (mcrd) (Entered: 12/29/2016) |
| 12/29/2016 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No: 11. Thu Dec 29 16:02:18 CST 2016 (crt) (Entered: 12/29/2016) |
| 12/29/2016 | 12 | STANDING ORDER ON NON-DISPOSITIVE MOTIONS. (Ordered by Magistrate Judge David L Horan on 12/29/2016) (mcrd) (Entered: 12/29/2016) |

| | | |
|---|---|---|
| 12/29/2016 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No: 12. Thu Dec 29 16:03:44 CST 2016 (crt) (Entered: 12/29/2016) |
| 01/03/2017 | 13 | SUMMONS Returned Executed as to Cresent Medical Center; served on 12/28/2016. (mem) (Entered: 01/03/2017) |
| 01/03/2017 | 14 | SUMMONS Returned Unexecuted as to Emanuel Rafael. Defendant is deceased. (mem) (Entered: 01/03/2017) |
| 01/05/2017 | 15 | ORDER REQUIRING 26(F) REPORT AND SETTING 16(B) CONFERENCE: Rule 26(f) Joint Status Report due by 2/2/2017. Rule 16(b) Pretrial Scheduling Conference set for 2/9/2017 10:00 AM before Magistrate Judge David L Horan. (Ordered by Magistrate Judge David L Horan on 1/5/2017) (mcrd) (Entered: 01/05/2017) |
| 01/05/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No: 15. Thu Jan 5 10:41:09 CST 2017 (crt) (Entered: 01/05/2017) |
| 01/10/2017 | 16 | MOTION Permission for telephone conference for Rule 26(f) filed by Cresent Medical Center (Attachments: # 1 Proposed Order Proposed Order) (Schell, Russell) (Entered: 01/10/2017) |
| 01/11/2017 | 17 | ORDER GRANTING 16 AGREED MOTION: Finding good cause, the Court GRANTS the parties' agreed motion requesting permission to conduct the Federal Rule of Civil Procedure 26(f) conference, to be held no later than January 19, 2017, telephonically. (Ordered by Magistrate Judge David L. Horan on 1/11/2017) (mcrd) (Entered: 01/11/2017) |
| 01/11/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No: 17. Wed Jan 11 11:16:18 CST 2017 (crt) (Entered: 01/11/2017) |
| 01/20/2017 | 18 | Joint STATUS REPORT *of Rule 26(f) Conference* filed by Cresent Medical Center. (Schell, Russell) (Entered: 01/20/2017) |
| 01/26/2017 | 19 | Notice of Defendant's Initial Disclosures filed by Cresent Medical Center (Schell, Russell) Docket event and text corrected on 1/27/2017 (twd). (Entered: 01/26/2017) |
| 01/27/2017 | 20 | Request for Exemption from the Scheduled Pretrial Conference Appearance of February 9, 2017 filed by Jewellean Moore. (rekc) (Entered: 01/27/2017) |
| 01/30/2017 | 21 | ORDER REGARDING RULE 16(B) PRETRIAL SCHEDULING CONFERENCE: While the Court will not excuse her participation in the Rule 16(b) pretrial scheduling conference, it will allow Plaintiff Jewellean Moore to appear telephonically. She shall therefore contact the Court's courtroom deputy, Shakira Todd, at 214-753-2165, no later than 2/6/2017, at 4:00 pm, to provide a number at which she can be reached for the Rule 16(b) pretrial scheduling conference on 2/09/2017, at 10:00 am. (Ordered by Magistrate Judge David L. Horan on 1/30/2017) (twd) (Entered: 01/30/2017) |
| 01/30/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:21. Mon Jan 30 11:51:02 CST 2017 (crt) (Entered: 01/30/2017) |
| 02/07/2017 | 22 | (Document Restricted) Plaintiff's Initial Disclosure filed by Jewellean Moore. (ykp) (Main |

| | | |
|---|---|---|
| | | Document 22 replaced on 2/8/2017) (ykp). Modified restriction level on 2/8/2017 per 23 Order(axm). (Entered: 02/08/2017) |
| 02/08/2017 | 23 | ORDER SEALING CERTAIN DOCKET ENTRIES OR PORTIONS THEREOF: Plaintiff Jewellean Moore has filed her initial disclosures under Federal Rule of Civil Procedure 26(a)(1). This filing includes medical information that could be considered confidential. Attached to her complaint are also medical records that similarly could be considered confidential. Out of an abundance of caution, the Court SEALS Dkt. No. 22 and portions of Dkt. No. 2 (pages 5-9). The continued sealing of this material will be discussed with the parties at the 2/9/2017 Federal Rule of Civil Procedure 16(b) scheduling conference. (Ordered by Judge Jane J. Boyle on 2/8/2017) (axm) (Entered: 02/08/2017) |
| 02/08/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:23. Wed Feb 8 12:37:53 CST 2017 (crt) (Entered: 02/08/2017) |
| 02/09/2017 | 24 | ELECTRONIC Minute Entry for proceedings held before Magistrate Judge David L. Horan: Pretrial Scheduling Conference held on 2/9/2017. Order to Enter. Attorney Appearances: Plaintiff - Jewellean Moore (pro se); Defense - Russell W Schell, Monica R Bailey. (Court Reporter: Digital File) (No exhibits) Time in Court - :17. (mcrd) (Entered: 02/09/2017) |
| 02/09/2017 | 25 | INITIAL SCHEDULING ORDER: Amended Pleadings due by 5/10/2017. Discovery due by 11/1/2017. Joinder of Parties due by 5/10/2017. Motions due by 12/1/2017. (Ordered by Magistrate Judge David L. Horan on 2/9/2017) (ykp) (Entered: 02/09/2017) |
| 02/09/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:25. Thu Feb 9 13:43:14 CST 2017 (crt) (Entered: 02/09/2017) |
| 02/10/2017 | 26 | AGREED ORDER TO SEAL MEDICAL RECORDS. (Ordered by Magistrate Judge David L. Horan on 2/10/2017) (mcrd) (Entered: 02/13/2017) |
| 02/13/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:26. Mon Feb 13 10:41:19 CST 2017 (crt) (Entered: 02/13/2017) |
| 02/15/2017 | 27 | MOTION to Appoint Counsel, alternatively Appointment of Medical Expert filed by Jewellean Moore. (ykp) (Entered: 02/15/2017) |
| 02/16/2017 | 28 | MEMORANDUM OPINION AND ORDER DENYING 27 MOTION TO APPOINT COUNSEL AND, ALTERNATIVELY, TO APPOINT AN EXPERT. (Ordered by Magistrate Judge David L. Horan on 2/16/2017) (twd) (Entered: 02/16/2017) |
| 02/16/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:28. Thu Feb 16 10:33:06 CST 2017 (crt) (Entered: 02/16/2017) |
| 03/07/2017 | 29 | MOTION for Leave to File Amended Complaint filed by Jewellean Moore. (Attachments: # 1 Additional Page(s) Amended Complaint) (aaa) (Entered: 03/07/2017) |

| 03/08/2017 | 30 | ORDER SETTING BRIEFING SCHEDULE re 29 Motion for Leave to Amend Complaint and Leave to Join an Additional Defendant: Defendant's Response due by 4/7/2017. Plaintiff's Reply due by 4/24/2017. Any party who desires oral argument must file a written request with the Court by 4/24/2017. (Ordered by Magistrate Judge David L. Horan on 3/8/2017) (twd) (Entered: 03/08/2017) |
|---|---|---|
| 03/08/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:30. Wed Mar 8 11:40:21 CST 2017 (crt) (Entered: 03/08/2017) |
| 03/09/2017 | 31 | MOTION to Compel Defendants filed by Jewellean Moore. (aaa) (Entered: 03/10/2017) |
| 03/09/2017 | 32 | MOTION for Protective Order filed by Jewellean Moore. (aaa) (Entered: 03/10/2017) |
| 03/10/2017 | 33 | ORDER REQUIRING JOINT STATUS REPORT: Joint Status Report due by 3/24/2017. (Ordered by Magistrate Judge David L. Horan on 3/10/2017) (epm) (Entered: 03/10/2017) |
| 03/10/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:33 . Fri Mar 10 14:18:53 CST 2017 (crt) (Entered: 03/10/2017) |
| 03/21/2017 | 34 | Joint STATUS REPORT filed by Crescent Medical Center. (Attachments: # 1 Exhibit(s) Exhibits to Defendant's Joint Status Report) (Schell, Russell) (Entered: 03/21/2017) |
| 03/24/2017 | 35 | Plaintiff's Joint STATUS REPORT filed by Jewellean Moore. (sss) Modified on 4/3/2017 (mcrd). (Entered: 03/24/2017) |
| 03/31/2017 | 36 | ORDER SETTING DISCOVERY CONFERENCE AND ORAL ARGUMENT ON PENDING DISCOVERY MOTIONS: The Court SETS a telephonic conference for 4/7/2017, at 10:00 a.m. The purpose of this conference is to allow for oral argument on Ms. Moore's pending motions and for the Court and the parties to discuss apparent difficulties with the discovery process highlighted by the parties' status reports. Ms. Moore and counsel for Crescent shall each contact the Court's courtroom deputy, Shakira Todd, at 214-753-2165, no later than 4/5/2017, at 4:00 p.m., to provide a number at which each can be reached for the conference on 4/7/2017, at 10:00 a.m. (Ordered by Magistrate Judge David L. Horan on 3/31/2017) (sss) (Entered: 03/31/2017) |
| 03/31/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:36. Fri Mar 31 09:39:54 CDT 2017 (crt) (Entered: 03/31/2017) |
| 04/07/2017 | 37 | ELECTRONIC Minute Entry for proceedings held before Magistrate Judge David L. Horan: Motion Hearing held on 4/7/2017 re 32 Motion for Protective Order filed by Jewellean Moore, 31 Motion to Compel filed by Jewellean Moore. Order to Enter. Attorney Appearances: Plaintiff - Jewellean Moore (pro se); Defense - Monica Rey Bailey, Casey Cole Campbell. (Court Reporter: Digital File) (No exhibits) Time in Court - :28. (mcrd) (Entered: 04/07/2017) |
| 04/07/2017 | 38 | ***DOCUMENT STRICKEN, PER 39 ORDER*** MOTION to Terminate or Limit Interrogatories/Deposition filed by Jewellean Moore. (axm) Modified on 4/7/2017 (aaa). |

|            |    |                                                                                                                                                                                                                                                                                                                                                                                 |
|------------|----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    | (Entered: 04/07/2017)                                                                                                                                                                                                                                                                                                                                                            |
| 04/07/2017 | 39 | Order Striking 38 MOTION to Terminate or Limit Interrogatories/Deposition filed by Jewellean Moore. Ms. Moore may refile the motion but only if the refiling complies with the Standing Order's requirements. (Ordered by Magistrate Judge David L. Horan on 4/7/2017) (aaa) (Entered: 04/07/2017)                                                                                    |
| 04/07/2017 | 40 | ORDER denying 31 Motion to Compel; denying 32 Motion for Protective Order. (Ordered by Magistrate Judge David L. Horan on 4/7/2017) (aaa) (Entered: 04/07/2017)                                                                                                                                                                                                                     |
| 04/07/2017 |    | ***Clerk's Notice of delivery: (see NEF for details) Docket No:39,40. Fri Apr 7 16:34:46 CDT 2017 (crt) (Entered: 04/07/2017)                                                                                                                                                                                                                                                      |
| 04/11/2017 | 41 | ***DOCUMENT STRICKEN PER 42 ORDER*** MOTION for Enlargement of Time to Respond to Defendant's Interrogatories/Document Request filed by Jewellean Moore. (sss) Modified on 4/12/2017 (aaa). (Entered: 04/11/2017)                                                                                                                                                                    |
| 04/12/2017 | 42 | Order Striking and Unfiling 41 MOTION to Extend Time filed by Jewellean Moore due to the following deficiency: The motion does not comply with the requirements of the Court's December 29, 2016 Standing Order on Non-Dispositive Motions [Dkt. No. 12 ]. (Ordered by Magistrate Judge David L. Horan on 4/12/2017) (aaa) (Entered: 04/12/2017)                                      |
| 04/12/2017 |    | ***Clerk's Notice of delivery: (see NEF for details) Docket No:42. Wed Apr 12 10:09:50 CDT 2017 (crt) (Entered: 04/12/2017)                                                                                                                                                                                                                                                        |
| 04/17/2017 | 43 | ELECTRONIC ORDER: The Court's staff received a telephone call from Defendant's counsel asking the Court to schedule a telephone conference regarding Ms. Moore requesting a Guardian Ad Litem be appointed to her case. Telephone Conference set for 4/18/2017 03:00 PM before Magistrate Judge David L. Horan. Defendant's counsel are ordered to circulate a dial-in number for this telephone conference to the Court (at Horan_Orders@txnd.uscourts.gov) and to Plaintiff by 5:00 p.m. Central Time on April 17, 2017. (Ordered by Magistrate Judge David L. Horan on 4/17/2017) (mcrd) (Entered: 04/17/2017) |
| 04/17/2017 |    | ***Clerk's Notice of delivery: (see NEF for details) Docket No:. NEF #43 Mon Apr 17 10:44:49 CDT 2017 (crt) (Entered: 04/17/2017)                                                                                                                                                                                                                                                   |
| 04/17/2017 | 44 | MOTION for Appointment of Guardian Ad Litem Alternatively Permission for Interlocutory Appeal filed by Jewellean Moore. (axm) (Entered: 04/17/2017)                                                                                                                                                                                                                                 |
| 04/18/2017 | 45 | ELECTRONIC Minute Entry for proceedings held before Magistrate Judge David L. Horan: Telephone Conference held on 4/18/2017 re 44 MOTION for Appointment of Guardian Ad Litem Alternatively Permission for Interlocutory Appeal. Order to enter. Attorney Appearances: Plaintiff - Jewellean Moore (pro se); Defense - Monica Rey Bailey. (Court Reporter: Digital File) (No exhibits) Time in Court - :12. (mcrd) (Entered: 04/18/2017) |
| 04/18/2017 | 46 | ORDER SETTING IN-PERSON HEARING REGARDING REQUEST TO                                                                                                                                                                                                                                                                                                                              |

| | | |
|---|---|---|
| | | APPOINT GUARDIAN AD LITEM AND STAYING DISCOVERY: Motion Hearing set for 5/2/2017 02:00 PM before Magistrate Judge David L. Horan re: 44 MOTION for Appointment of Guardian Ad Litem. The Court STAYS all discovery obligations until the Court rules on the request for a guardian an litem. And the Court WARNS the parties that the failure to appear in person on May 2, 2017 will subject a party to sanctions, including dismissal of this action for failure to prosecute and obey orders of the Court. (Ordered by Magistrate Judge David L. Horan on 4/18/2017) (mcrd) (Entered: 04/19/2017) |
| 04/18/2017 | 47 | ***DISREGARD, FILED IN INCORRECT CASE***ORDER SETTING SETTLEMENT CONFERENCE: Settlement Conference set for 5/4/2017 09:30 AM before Magistrate Judge David L. Horan. (Ordered by Magistrate Judge David L. Horan on 4/18/2017) (mcrd) Modified on 4/19/2017 (mcrd). (Entered: 04/19/2017) |
| 04/18/2017 | 50 | Correspondence to the Court filed by Arthur Carson for Jewellean Moore. (epm) (Entered: 04/27/2017) |
| 04/19/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:46. Wed Apr 19 08:52:18 CDT 2017 (crt) (Entered: 04/19/2017) |
| 04/24/2017 | 48 | NOTICE of *Defendant's Position regarding Plaintiff's Motion for Leave to Amend* filed by Crescent Medical Center (Schell, Russell) (Entered: 04/24/2017) |
| 04/27/2017 | 49 | MOTION for Default Judgment against Crescent Medical Center, Emanuel Rafael and Stay of the In-Person Guardian Ad Litem Hearing/Pending De Novo Review filed by Jewellean Moore. (epm) (Entered: 04/27/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/28/2017 10:10:31 | | |
| PACER Login: | sq0018:2638654:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:16-cv-03362-M-BN |
| Billable Pages: | 6 | Cost: | 0.60 |



**Links Paratransit Service**
**Physician Verification of Disability**
**Form**

Date __4/11/2017__

Patient Name __Moore, Jewellean__

DOB __07/03/1955__

| ***Please Note*** |
| --- |
| This form must be filled out in its entirety. Incomplete forms will not be processed and will be returned to the patient. |

The person named above is ☐ **currently being treated** or ☐ **was formerly treated** by me. The person has informed me of his/her intent to apply for Central Arkansas TransitAuthority (CATA) Links service. The information provided in this form is intended to verify any medical/health conditions that **prevent** the applicant from using CATA's fixed route bus service.

Please Check One:

✓ Physician

___ Licensed HealthCareProvider

___ Licensed Rehab/Social Worker

___ Orientation Mobility Specialist

Medical diagnosis and explanation of condition causing disability.

__Arthritis, Obesity, Mentally disabled,__
__Type 2 DM, HTN__

Disability Status (Select One):
☐ Patient will be temporarily disabled for _____ months.
☑ Patient is considered permanently disabled.

Does the disability prevent the applicant from utilizing the CATA fixed route services (regular bus service)? If yes, please describe in detail.

__Patient cannot read and with the mental__
__disability prevent her from getting to destination__
__safely.__
__with the arthritis, has difficulty in ambulation__

32

Page 8 of 9

Can the applicant walk or wheel $\frac{1}{4}$ mile (3 blocks) without the assistance of another person?

☐Yes  ☑No

Can the applicant climb three 10-inch steps with assistance?  ☐Yes  ☑No

Can the applicant wait outside without support for 15 minutes?  ☑Yes  ☐No

Is the applicant on dialysis?  ☐Yes  ☑No

Does the applicant have a hearing impairment?  ☐Yes  ☑No

Is the applicant able to recognize a destination or landmark?  ☐Yes  ☑No

Is the applicant able to give addresses and phone numbers upon request?  ☑Yes  ☐No

Is the applicant able to deal with unexpected situations or unexpected changes
in routine?  ☐Yes  ☑No

Is the applicant able to ask for, understand, and follow directions?  ☐Yes  ☑No

Is the applicant able to safely and effectively travel alone through crowded and/or complex
facilities?  ☐Yes  ☑No

Does the applicant require a personal care attendant?  ☑Yes  ☐No

Based upon my professional knowledge of the applicant, I certify that the preceding information is
true and correct.

DEEPA  JAYAKRISHNAN                    501- 686-6560
Name (Please Print)                   Office Phone Number

521 Jack Stephens Drive, Little Rock  AR      72205
Office Street Address          City        State    Zip Code

_____

State License Number (Complete if Applicable - MUST BE CURRENT)


Signature: _____        Date: 4/11/2017

Transcript of the Testimony of

# Jewellean Moore

**Date:** March 10, 2017

**Case:** Jewellean Moore v. Lancaster Regional Hospital

**Bushman Court Reporting**
Crystal Garrison, CCR
Phone:  (501) 372-5115
Fax: (501) 378-0077

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JEWELLEAN MOORE          ) PLAINTIFF
                         )
VS.                      ) No. 3:16-CV-03362-M-BN
                         )
LANCASTER REGIONAL       )
HOSPITAL, L.P. d/b/a     )
CRESCENT MEDICAL CENTER  )
LANCASTER                ) DEFENDANT.

--------------------------------

VIDEOTAPED DEPOSITION OF

JEWELLEAN MOORE

MARCH 10, 2017

--------------------------------

VIDEOTAPED DEPOSITION OF JEWELLEAN MOORE, produced
as a witness at the instance of the Defendants, and duly
sworn, was taken in the above-styled and numbered cause
on March 10, 2017, from 1:53 p.m. to 2:56p.m., before
Crystal Garrison, Certified Court Reporter, in and for
the State of Arkansas, reported by machine shorthand, at
the offices of Bushman Court Reporting, 620 West Third
Street, Suite 302, Little Rock, Arkansas, pursuant to
the Federal Rules of Civil Procedure.

## Page 2

1
2          A P P E A R A N C E S
3
   ATTORNEY FOR THE DEFENDANT:
4     MS. MONICA REY BAILEY
      Schell Cooley, LLP
5     15455 Dallas Parkway, Suite 550
      Addison, Texas 75252
6     214-665-2000
      mbailey@schellcooley.com
7
8
   ALSO PRESENT:
9
      MR. ARTHUR CARSON
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 3

```
 1                    INDEX
 2                           PAGE
 3  JEWELLEAN MOORE
       Examination by Ms. Bailey........................4
 4
 5  Reporter's Certificate..............................48
 6
 7
 8
 9
10             EXHIBIT INDEX
11  NO.  DESCRIPTION                       PAGE
12   1  Deposition Notice, 2 pages.......................5
13   2  5/6/16 Medical Record, 2 pages..................40
14   3  Blood draw lab Results, 2 pages.................40
15   4  Urinalysis results, 1 page......................41
16
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1      VIDEOGRAPHER:  We are on the record at 1:53 p.m. on
 2  March 10th, 2017.  This is Mike Tscheimer, Legal Video
 3  Specialist.  We're at Bushman Court Reporting, 620 West
 4  Third Street in Little Rock, Arkansas, to take the
 5  deposition of Jewellean Moore in the matter of Jewellean
 6  Moore versus Crescent Medical Center Lancaster, United
 7  States District Court, Case No. 3:16CV03362M-BN.
 8      The court reporter is Crystal Garrison.  Will
 9  counsel please state your appearance for the record.
10      MS. BAILEY:  Monica Bailey, Schell Cooley Law Firm
11  in Dallas.
12      VIDEOGRAPHER:  Madame Reporter, will you please
13  swear in the witness.
14          (Witness sworn.)
15      VIDEOGRAPHER:  Thank you.  Please proceed.
16          JEWELLEAN MOORE,
17  having been first duly sworn, testified as follows:
18          EXAMINATION
19  QUESTIONS BY MS. BAILEY:
20  Q.  Good afternoon, Ms. Moore.  Thank you for being
21  here.  Would you state your name for the record and
22  spell it, please?
23  A.  Jewellean Moore, J-E-W-E-L-L-E-A-N, Moore,
24  M-O-O-R-E.
25  Q.  Very good.  Ms. Moore, before we get started, I just
```

1 (Pages 1 to 4)

Page 5

1  want to show you the deposition notice, just to make
2  sure that we are all on the same page as to why you're
3  being deposed here today and that you did receive that
4  notice.  Do you recognize it, Ms. Moore?
5      Do you recognize that, Ms. Moore?
6  A.  Uh-huh.
7  Q.  Okay.  Very good.
8      MS. BAILEY:  Exhibit 1 -- if you don't mind handing
9  that to the court reporter or back to me.  Thank you
10 very much.
11     (Exhibit No. 1 marked for identification.)
12 Q.  (BY MS. BAILEY)  Ms. Moore, we'll just do a few
13 housekeeping things before we get going here.  Just a
14 reminder, as you know you're under oath and it's just
15 like you're talking in front of the judge and jury.
16 Okay?  So, we'll be making a record of the entire
17 proceeding.
18     If at any time you need to take a break, you just
19 say I need to take a break, we'll go off the record,
20 take as long as you need and then when we come back,
21 we're back on the record.  Okay?  So, the length of the
22 deposition time that we'll have is up to -- well, the
23 rules say seven hours, but we agree to six.
24     And that's up to six hours on the record.  Okay?
25 So, any breaks you take will be taken off that time and

Page 6

1  we'll have to keep going to make up that six hours, if
2  we go that long.  Okay?  Do you understand?
3  A.  Uh-huh.
4  Q.  Okay.  And if you would, please say yes or no
5  clearly so the court reporter can type it down.
6  A.  Yes.
7  Q.  Thank you.  Ms. Moore, are you on any medications
8  today that would affect your ability to recall or
9  respond to my questions?
10 A.  No.
11 Q.  Okay.  If you don't understand any question that I
12 ask, you have the right to a clear question, so you just
13 ask me please restate that or I don't know what you're
14 saying, anything like that's fine, and I'll -- I'll
15 restate what I'm saying.  Okay?
16 A.  Yes, ma'am.
17 Q.  And you can do that any time if you don't understand
18 what I'm asking you.  Ms. Moore, because this is a
19 medical malpractice claim, a lot of the questions I'm
20 going asking you are necessarily personal, and they're
21 questions about your medical history and personal
22 history.  That's -- those are the kinds of questions
23 that you can expect.
24     I'm not here to harass you or embarrass you, those
25 are the kinds of questions I need to ask to defend my

Page 7

1  client.  Okay?
2  A.  Yes, ma'am.
3  Q.  Have you reviewed any documents to prepare for this
4  deposition today?
5  A.  I don't...
6  Q.  Have you looked at any of your medical records or
7  any other documents or papers to -- to prepare for what
8  you're going to talk about today?
9  A.  Yes.
10 Q.  Can you tell me what those were?
11 A.  Well, some of them was about if I was a criminal.
12 Q.  If you don't mind, just look at me, if you would,
13 because Mr. Carson can't help you answer your questions.
14 So, did you look at any medical records to remind
15 yourself of any of the events of May 6th or -- to May
16 11th of 2016?
17 A.  Yes.  But I don't -- I -- I done forgot most of it.
18 Q.  Okay.  That's all right.  Did you look at any other
19 papers to help you kind of think through what your
20 answers were going to be today?
21 A.  Yes.
22 Q.  Do you remember what any of that was?  Would you say
23 were looking at maybe a background check or some kind of
24 records; is that what you were saying?
25 A.  Yes.

Page 8

1  Q.  Okay.  Do you remember what kind of records?
2  A.  (No response.)
3  Q.  That's okay.  If you don't remember, we'll move on.
4  I was just wondering if you were looking at anything
5  specific pertaining to this case.  We'll move on.  Have
6  you spoken with anyone to prepare for this deposition
7  today?
8  A.  Only Mr. Carson.
9  Q.  Okay.  Mr. Carson.  And have you ever been deposed
10 before?
11 A.  Been what?
12 Q.  Have you ever been in a situation like this where
13 you have to answer questions to an attorney with a court
14 reporter and under oath?
15 A.  No.
16 Q.  Okay.  So, this is your first deposition?  Okay.
17 Have you ever been the subject of a lawsuit?  Has anyone
18 ever sued you?
19 A.  No.
20 Q.  You've never been named in any kind of lawsuit?
21 A.  No.
22 Q.  Okay.  Did you make any type of notes or keep any
23 kind of personal diary of what the events from May 6 to
24 May 11, 2016, like, when you were at the hospital at
25 Crescent Medical Center, for example, did you write down

2  (Pages 5 to 8)

Page 9

1    anything you were feeling or afterwards?
2    A.  No.
3    Q.  Okay.  Are you aware of any kind of recordings like
4    that?  Did somebody else perhaps write down things that
5    were said or things that happened while you were at
6    Crescent Medical Center at that time?  After
7    May -- excuse me, between May 6th and May 11th of 2016?
8    A.  No.  Mr. Carson did a lot of my things because I
9    wasn't at myself at the time.
10   Q.  Okay.
11   A.  So, a lot of it, I don't remember.
12   Q.  Okay.  That's fine.  Ms. Moore, state your date of
13   birth, please.
14   A.  July the 3rd, 1955.
15   Q.  Okay.  And where were you born, ma'am?
16   A.  Dallas, Texas.
17   Q.  All right.  And what is your occupation right now?
18   A.  I don't have an occupation.
19   Q.  Okay.  Let's go back a few years.  Have you ever had
20   an occupation or something that you've been trained to
21   do that you used to do for work?
22   A.  It's been over 10/15 years ago.
23   Q.  Okay.  And is there a reason why you're not
24   currently working?
25   A.  Because I'm disabled.

Page 10

1    Q.  Okay.  And how long have you had a disability,
2    ma'am, that has prevented you from working?
3    A.  Five to ten years.
4    Q.  About ten years?
5    A.  (Nodding head.)
6    Q.  Okay.  Do you have any children, Ms. Moore?
7    A.  I have three.
8    Q.  You do?  And what are their ages?
9    A.  I got some twins, they 20 -- I mean, they 30.  And I
10   got a son 44.
11   Q.  Okay.  And do they live here in Arkansas?
12   A.  No.
13   Q.  Do they live in the Dallas area?
14   A.  Yes.
15   Q.  All three of your children?
16   A.  Yes.
17   Q.  Okay.  And how long have you been residing at your
18   current address in Little Rock?
19   A.  I've been here about five or six months.  But I
20   lived here before and I moved.
21   Q.  You lived here before.  And we'll go through that.
22   So, we'll walk through that here in a bit.  But you had
23   been living at Dallas or the Dallas area and then you've
24   returned back to Arkansas after you were at Crescent
25   Medical Center in Baylor University?

Page 11

1    A.  Yes.
2    Q.  Do you know about how long after you were discharged
3    from Baylor University Hospital that you moved back to
4    Arkansas?
5    A.  I guess it would have been about eight months.
6    Q.  About eight months later?
7    A.  Yeah.
8    Q.  Okay.  So, after May 11th, you stayed in the Dallas
9    area for about 8 months?
10   A.  (Nodding head.)
11   Q.  And then, you returned back to Little Rock?
12   A.  Yes.
13   Q.  Okay.  What is your -- I know you're not working
14   right now.  What is your annual income from all of the
15   different sources that you have?
16   A.  735.
17   Q.  $735?
18   A.  Uh-huh.
19   Q.  Monthly?
20   A.  (Nodding head.)
21   Q.  Okay.  And what is the source of that income, Ms.
22   Moore?
23   A.  What you mean?
24   Q.  Is it Social Security benefits or how do you --
25   how -- where is that money coming from?

Page 12

1    A.  I get SSI.
2    Q.  SSI?
3    A.  (Nodding head.)
4    Q.  Are there any other benefits that you're receiving?
5    A.  No.
6    Q.  It's all Social Security income?
7    A.  (Nodding head.)
8    Q.  Okay.  And so, before you -- you were admitted --
9    or, I'm sorry -- you presented to Crescent Medical
10   Center on May 6th, 2016.  Where were you living at that
11   time in the Dallas area?
12   A.  I was living in Mesquite.
13   Q.  Mesquite?  And how long had you been living there?
14   A.  I can't remember exact date.
15   Q.  Okay.  Months?  Years?  Do you know?
16   A.  It was some months.
17   Q.  Several months?
18   A.  (Nodding head.)
19   Q.  Before you were in Mesquite, were you in Little Rock
20   again?
21   A.  Yes, I think I was.
22   Q.  Okay.  So, you lived some months in Mesquite and
23   before you lived in Mesquite -- where did you live
24   before you moved to Mesquite?
25   A.  I lived here for five years, then I moved.

3  (Pages 9 to 12)

Page 13

1    Q. Okay. So, you were in Little Rock area about five
2    year, moved to Mesquite for several months, moved back
3    to the Little Rock area?
4    A. (Nodding head.)
5    Q. Okay. Very good. Thank you. What brought you to
6    Texas after being here five years?
7    A. Well, I -- I thought I wanted to go back, but things
8    wasn't right, so I just moved back down here.
9    Q. Okay. What do you mean things weren't right?
10   A. The housing wasn't -- wasn't proper right. And I
11   was trying to get a house there, but things didn't work
12   out, so I moved back down here.
13   Q. Okay. Were you residing with any of your children
14   during any of that time?
15   A. Yes. I -- I was down there where my kids was. Then
16   I moved back, though.
17   Q. Okay. So, you tried to find a housing situation to
18   stay in that area and it end up -- it didn't work out?
19   A. No.
20   Q. Okay. Are any family members of yours healthcare
21   professionals, nurses, doctors, nurse tech, lab tech,
22   anything like that?
23   A. Well, my daughter is going to be -- trying to be a
24   nurse.
25   Q. Oh, that's good. Good for her. Is she currently

Page 14

1    working in the medical profession?
2    A. Well, she's in school right now.
3    Q. Do you know if she's in school to be an LVN or a
4    registered nurse?
5    A. I think it's LVN.
6    Q. Okay. Is she working at any hospitals or medical
7    facilities in the Dallas area?
8    A. Well, she's not just say working. But she goes
9    there and do different things until she get -- get
10   stable where she can go to work.
11   Q. Right. Do you know what facility she -- she either
12   interns at or practices at?
13   A. Well, sometimes she practice at Parkland and then
14   sometimes she goes to -- I think it's -- I can't think
15   of all the places she goes. She goes to different
16   hospitals. She goes to Richardson sometimes.
17   Q. Okay. Richardson Methodist?
18   A. Yeah.
19   Q. Okay. Have you spoken to any medical professionals
20   about this case?
21   A. No.
22   Q. Have you spoken to your daughter about this case?
23   A. (Shaking head.)
24   Q. Okay. So, your daughter's not aware of -- has she
25   viewed your medical records?

Page 15

1    A. No.
2    Q. Okay. Has anyone that you've spoken to been
3    critical of the care at Crescent Medical Center?
4    A. No.
5    Q. Okay. I'm going to shift focus a little bit. I
6    want to talk about some of these -- some of the lawsuits
7    that you are named in as a plaintiff, if you don't mind.
8    Just one in particular, I think there's a lawsuit filed
9    April 21st, 2016, with Real Page or versus Real Page,
10   Jewellean Moore and Arthur Carson versus Realpage.com.
11       Let me show you a copy of that to refresh your
12   memory. Do you remember filing that lawsuit?
13   A. I kind of remember some of it, but not much of it.
14   Q. Okay. Did you -- did you write the claims in this
15   lawsuit?
16   A. No.
17   Q. No? Did somebody else write the lawsuit with you or
18   for you?
19   A. Mr. Carson helped me out with a lot of things that I
20   don't understand.
21   Q. Okay. So, Mr. Carson wrote the lawsuit?
22   A. (Nodding head.)
23   Q. Did he file the lawsuit as well or did you file it?
24   A. He filed it for me.
25   Q. Okay. Do you -- is this case still active? Is it

Page 16

1    still in the courts?
2    A. I'm not for sure.
3    Q. Okay. So, you don't know if this case has settled
4    or been dismissed?
5    A. No.
6    Q. Okay.
7    A. I don't remember.
8    Q. You don't remember?
9    A. (Shaking head.)
10   Q. Okay. I think if it's the same case, were a couple
11   filings in this matter. Give me a moment, I'm sorry.
12   Okay. Do you recognize this, Ms. Moore? You ever seen
13   that document before?
14   A. Yes, I remember this.
15   Q. Okay. And do you know what this document is? Do
16   you understand what a Stipulation of Dismissal is?
17   A. No.
18   Q. Okay. This stipulation -- so, it means that the --
19   the case is over in front of the federal court. And it
20   states that you all have reached a settlement. Did you
21   sign a confidentiality agreement regarding any
22   settlement with Los Lomas Associates, Brisa Hernandez
23   and RealPage, Incorporated?
24   A. I don't remember.
25   Q. You don't remember signing a confidentiality

4  (Pages 13 to 16)

Page 17

1    agreement?
2    **A.  No.**
3    Q.  Do you know if someone else signed a confidentiality
4    agreement?  If Mr. Carson signed a confidentiality
5    agreement?
6    **A.  You have to ask him because I don't remember.**
7    Q.  Okay.  Do you recall what the settlement was in this
8    case?
9    MR. CARSON: That's part of the confidentiality,
10   don't even go into that.
11   MS. BAILEY: Okay. Mr. Carson, you can't speak on
12   the record, okay?
13   MR. CARSON: I understand that.  However, because of
14   her situation -- we're going to put this on the record.
15   See, right now, what your -- you're trying to harass,
16   annoy her.  It's certain things she don't have a memory
17   of.  And that is the issue.  That's the issue in this
18   case.
19   MS. BAILEY: Okay.  Then it's possible that you may
20   need to do some kind of hearing to adjudicate that.  But
21   at this time, if she doesn't remember, that's fine.
22   I'll move on.
23   MR. CARSON: What -- a continuation.  I'm going to
24   advise her she may need to terminate these depositions.
25   MS. BAILEY: Okay.  You can't advise her of that.

Page 18

1    She has to make that determination on her own.
2    MR. CARSON: Yes, I understand.
3    Q.  (BY MS. BAILEY) Now, Ms. Moore, what you need to
4    understand is:  If you terminate this deposition -- now,
5    I'll move on.  If you don't remember, you don't
6    remember, and I'm going to move on.  Okay?
7    But I need to keep asking certain questions and if
8    you don't remember, I'll go to another one.  Okay?  But
9    if we do terminate this hearing right now, we'll --
10   we'll file a motion and we'll resume in -- in Dallas.
11   Okay?
12   So, it's -- let's just keep going.  If you don't
13   remember, you don't remember.
14   MS. BAILEY: Mr. Carson, you cannot speak on the
15   record again.  Okay?
16   Q.  (BY MS. BAILEY) All right.  So, you don't remember
17   any settle agreement and it's possible somebody signed a
18   confidential agreement.  And that's fine.  We'll move
19   on.  Okay?
20   I can ask you and I will ask you:  If you had
21   settlement funds, do you have any of those settlement
22   funds left?
23   **A.  I don't have anything.**
24   Q.  Okay.  Have you received settlements in any other
25   lawsuits or from any other lawsuits?

Page 19

1    **A.  No.**
2    Q.  Okay.  So, you've already stated you lived in Texas
3    when you filed the suit April 21st.  You stated you
4    lived in Mesquite.  Do you recall the address that you
5    lived at?
6    **A.  No, I don't remember.**
7    Q.  Okay.  Do you have any other active lawsuits at this
8    time in which you're a plaintiff?
9    **A.  No.**
10   Q.  Okay.  All right.  Let's talk about your medical
11   history, okay?  Now, according to your medical records,
12   when you presented at Crescent Medical Center -- and I'm
13   sure you already know this -- you had diabetes.  Can you
14   tell me about when you remember that you were diagnosed
15   with diabetes?
16   **A.  It's been about 10/11 years ago.**
17   Q.  Okay.  And do you take insulin for your diabetes?
18   **A.  Yes.**
19   Q.  Okay.  You take injections?
20   **A.  Uh-huh.**
21   Q.  Every day?
22   **A.  Yes.**
23   Q.  Okay.  Do you take any other medications for your
24   diabetes?
25   **A.  No.  It's just insulin and my blood pressure**

Page 20

1    **medication.**
2    Q.  Okay.  So, you take -- when did you get diagnosed
3    with hypertension or high blood pressure?
4    **A.  I guess about around the same time I was about my**
5    **diabetes.**
6    Q.  About 10 or 11 years ago?
7    **A.  (Nodding head.)**
8    Q.  So, have you been taking hypertension medication and
9    insulin every day?
10   **A.  Uh-huh.**
11   Q.  More or less, for the last 10 or 11 years?
12   **A.  Uh-huh.**
13   Q.  Okay.  And for your hypertension medication, what
14   are you currently taking for that now?
15   **A.  Nepripene (phonetic.)**
16   Q.  Is that a medication you need to take every day?
17   **A.  Uh-huh.**
18   Q.  More than once a day?
19   **A.  No, just once a day.**
20   Q.  Okay.  Do you ever have to take it more than once a
21   day?  Are you allowed to take it more than once a day if
22   you need it?
23   **A.  No.**
24   Q.  Okay.  Once a day?  Are there any other medications
25   you take for high blood pressure?

5  (Pages 17 to 20)

Page 21

1  A.  Here's all my medications.
2  Q.  Okay.  I'll ask you about those.  Ms. Moore, have
3  you had any heart attacks?
4  A.  No.
5  Q.  Okay.  Any strokes?
6  A.  I had a stroke about 15 years ago.
7  Q.  15 years ago.  Were you in the hospital for that?
8  A.  No.  They just -- well, I might have stayed two,
9  three days, then I got out.
10  Q.  Whereabouts in the country were you living when you
11  had a stroke?
12  A.  In Dallas.
13  Q.  In Dallas.  Do you remember what hospital you were
14  at?
15  A.  At -- I can't remember what hospital.
16  Q.  Okay.  That's okay.  Let me go through your
17  medication.  Thank you for bringing me this, because
18  it's a lot of big words and it's a lot to go through.
19  Ribir -- ribavirin -- sorry, I'm probably not going to
20  say these right.  Now, what is the ribavirin for?
21  A.  That was for hepatitis.  I don't have that anymore.
22  Q.  Okay.  These aren't -- these aren't current
23  medications that you're taking?
24  A.  Well, the others are, but that's not.
25  Q.  Okay.  All right.  We'll stick with what you're

Page 22

1  currently taking.  So, you've got the nepripene.  for
2  hypertension.  We have the insulin daily?
3  A.  Uh-huh.
4  Q.  And then, what are the other medications you're
5  currently taking?
6  A.  That's all I take, my insulin and my diabetes
7  medicine.
8  Q.  Uh-huh.  Okay.  And you don't need to take any other
9  -- do you take pain medication?
10  A.  No.
11  Q.  Okay.  Have you had any surgeries?
12  A.  It's been some years.
13  Q.  Okay.  What surgery did you have when you had a
14  surgery?
15  A.  I had -- I had a hernia --
16  Q.  Okay.
17  A.  -- repaired.  And then I had my kids; I had
18  C-sections.
19  Q.  Okay.  Have you had any -- apart from your
20  hospitalization in -- at Baylor University Medical
21  Center where they diagnosed you with sepsis, have you
22  ever had sepsis before?
23  A.  No.  That was the first time I had it.
24  Q.  Have you ever had any kind of severe bacterial
25  infections?

Page 23

1  A.  Yes.  It's been a while back.
2  Q.  What did you have?  Do you remember?
3  A.  It was a bladder infection.
4  Q.  Okay.  You ever had staph infection?
5  A.  I think that's what they called it.  I'm not for
6  sure.
7  Q.  Okay.  Do you remember if you had to be hospitalized
8  for that?
9  A.  Oh, no.
10  Q.  Okay.  Have you ever presented -- apart from May
11  6th, when you went to Crescent Medical Center, and May
12  7th, when you were at Baylor Scott & White, have you
13  ever been to an emergency room before?
14  A.  Yes.
15  Q.  Do you remember which ones?  Let's talk about one
16  you remember.  What's one time you remember?  Where did
17  you go and what did you go for?
18  A.  I went to -- the last I remember, I went to Baylor.
19  That's the last one.
20  Q.  Okay.  Do you remember why you went to the emergency
21  room in --
22  A.  Because I was having bad headaches and things.
23  Q.  Okay.  Is this the same time that we're talking
24  about from May 6th to May 11th, 2016?
25  A.  Uh-huh.

Page 24

1  Q.  Do you recall any other visits to an emergency room
2  besides when you were in Texas that time?  Have you been
3  to an emergency room in Arkansas?  Have you had to do a
4  visit in Little Rock or anywhere near Little Rock?
5  A.  Huh-uh.
6  Q.  Okay.  Are you currently under the care of a
7  physician?
8  A.  Yes.
9  Q.  You have regular doctor appointments?
10  A.  Uh-huh.
11  Q.  Okay.  Can you tell me the name of your physician,
12  please?
13  A.  Dr. Deepa.
14  Q.  Can you spell that for me?
15  A.  It's D-E-E-P-A.  I think it is.
16  Q.  Okay.  And where is this doctor?
17  A.  At UM -- UMAS (sic) Medical Center.
18  Q.  Is that in Little Rock?
19  A.  Uh-huh.
20  Q.  Okay.  And what do you see Dr. Deepa for?
21  A.  Just for like, checkups and things.  And make sure I
22  don't have anything wrong with me.
23  Q.  Okay.  How often do you see Dr. Deepa?
24  A.  Well, maybe once a month or twice a month, according
25  to how I feel.

6  (Pages 21 to 24)

Page 25

1   Q.  Okay.  And when you're not feeling well, what are
2   the symptoms that take you to Dr. Deepa's office?
3   A.  Like, if I'm having a headache or something or I
4   need to get my prescription refilled, something like
5   that.
6   Q.  Okay.  Are you receiving any kind of home visits for
7   any reason?
8   A.  No.
9   Q.  Okay.  Do you go to physical therapy for any reason?
10  A.  Well, they still hadn't got my -- my hospital
11  records from Dallas, so, I haven't started to.  But I'm
12  getting ready to go.
13  Q.  Okay.  And what -- what do you -- has a medical
14  professional told you that you need physical therapy?
15  A.  (Nodding head.)
16  Q.  Okay.  For what?  Can you tell me what it's for?
17  A.  For that cell feel -- I can't say it.
18  Q.  And how about if you just tell me like, is it for
19  speech therapy or walking or, you know, muscles?
20  What -- do you know what the -- what -- what they're
21  trying to help you with, with the physical therapy?
22  A.  Well, some of it's for my memory, different things
23  like that.
24  Q.  Okay.  And when you say "they," where -- where are
25  you planning on having your physical therapy?

Page 26

1   A.  At the hospital where I go to.
2   Q.  Under Dr. Deepa's care?
3   A.  Uh-huh.
4   Q.  Okay.  And you're still awaiting the records from
5   Baylor University Hospital --
6   A.  Uh-huh.
7   Q.  -- from your visit from May 7th to May 11th of last
8   year?
9   A.  Uh-huh.
10  Q.  Okay.  Remember to say yes, if you can.
11  A.  Yes, ma'am.
12  Q.  Thank you.  Tell me about Medicaid, when did you
13  first enroll in Medicaid?
14  A.  I can't remember exactly.
15  Q.  Okay.  Years?
16  A.  It's maybe about a year or two.
17  Q.  About a year or two?  Okay.  And so, what states
18  have you received Medicaid benefits?
19  A.  In Texas and then here.
20  Q.  Okay.  Before you moved to Texas when you were there
21  in May, before that, when you were in Arkansas, were you
22  receiving Medicaid benefits?
23  A.  Yes.
24  Q.  That was your healthcare, Medicaid?
25  A.  Uh-huh.

Page 27

1   Q.  Okay.  And then, when you moved to Texas, did you
2   reenroll and apply again for Medicaid in Texas?
3   A.  Yes.
4   Q.  Okay.  Do you remember how you reenroll for
5   Medicaid in Texas when you moved?
6   A.  Well, I think it was from the doctors here that
7   helped me get it back started.
8   Q.  Okay.  And do you remember how long it took after
9   you moved from Little Rock and then you were in the
10  Mesquite area, do you remember how long it took for your
11  Medicaid benefits to start back again?
12  A.  No.
13  Q.  Do you remember if it was one month or two months?
14  A.  It might have been a month or two.  I don't know.  I
15  don't remember.
16  Q.  Okay.  Does Medicaid pay for your prescriptions?
17  A.  Yes.
18  Q.  When you have Medicaid, for example, here in
19  Arkansas, how much does your hypertension medication
20  cost; do you know?
21  A.  No.
22  Q.  Is it free on the plan?
23  A.  Yeah.
24  Q.  It's free?
25  A.  (Nodding head.)

Page 28

1   Q.  So, your hypertension medication is free.  And
2   your insulin, is it free on the plan?
3   A.  Well, sometimes I might have $2 co-pay or something
4   like that.  Other than that, no.
5   Q.  Okay.  Now, when you moved to Texas -- and I
6   understand you have to reenroll in Medicaid and it can
7   take several days, up to two or three months.  Were you
8   in Texas long enough to start back up on your Medicaid
9   benefits?
10  A.  No.
11  Q.  You never received Medicaid benefits when you were
12  in Texas?
13  A.  No.  They just -- I could go to the doctor and
14  they'd just check me.  Like, sometime you don't have
15  money or Medicaid, they'll check you out --
16  Q.  Okay.
17  A.  Different things.
18  Q.  Okay.  Were you -- strike that.  I'll come back.
19  Tell me a little bit about before May 6th, 2016, and you
20  were living in Texas with your family looking for a
21  place.  Tell me what kinds of things you liked to do and
22  what kinds of activities you -- you would do with your
23  family and friends.
24  A.  Well, I didn't be around my family too much.  But
25  sometimes I would see them.

7  (Pages 25 to 28)

Page 29

1  Q.  Okay.  Did you go out to eat or go to church or?
2  A.  No.
3  Q.  No activities like that?
4  A.  Huh-uh.
5  Q.  Go walking, go to the park, anything that you like
6  to do with Mr. Carson on a date or anything?
7  A.  Sometimes we might go to the park or something like
8  that.
9  Q.  When it wasn't too hot?
10  A.  Yeah.  Or it wasn't too cold.
11  Q.  Very hot in Texas; isn't it?  Your daily physical
12  activity, what kinds of things did you do around the
13  house?
14  A.  Well, mostly I like to make quilts and stuff and
15  things like that.
16  Q.  Uh-huh.  My grand -- or my mother-in-law makes
17  quilts.  So, you like quilting?
18  A.  Uh-huh.
19  Q.  You go to the fabric store and get extra scraps and
20  things like that?
21  A.  Sometimes.
22  Q.  Okay.  Do you go to the market.  Are you able to
23  go -- were you able to go shopping to the grocery store?
24  A.  Uh-huh.
25  Q.  Okay.  On a daily basis, back before May 6th, did

Page 30

1  you need -- require a wheelchair to get around?
2  A.  No.
3  Q.  Okay.  You were able to walk wherever you needed to
4  go?  Back and forth in the house or when you were in the
5  grocery store, you were able to walk down the aisle?
6  A.  (Nodding head.)
7  Q.  Okay.  What about any medical treatments or
8  therapies before May 6th, were you taking any physical
9  therapy for anything when you were down in -- in Dallas
10  before you went to the hospital the first time to
11  Crescent Medical Center?
12  A.  Huh-uh.
13  Q.  You weren't under -- you weren't undergoing any kind
14  of physical therapy?
15  A.  (Shaking head.)
16  Q.  Okay.  Before you went to Crescent Medical Center --
17  and I'm talking about three or four or five months
18  before then -- did you go to any other hospital for any
19  other reason while you were in Dallas?
20  A.  Huh-uh.
21  Q.  Okay.  Has your doctor talked to you about what a
22  healthy blood pressure reading should be, a healthy
23  range for your blood pressure?
24  A.  He did, but I've forgotten.
25  Q.  Okay.  Do you take your blood pressure every day or

Page 31

1  does someone else take it for you?
2  A.  No.  Sometimes I take it if I don't forget to take
3  it.
4  Q.  Okay.  Can you tell when you -- when your blood
5  pressure is getting high or low; do you feel a certain
6  way?
7  A.  I kind of feel kind of lightheaded.
8  Q.  Okay.  So, how were you feeling -- I know that on
9  May 6th, we're going to talk about the symptoms you
10  presented with at Crescent Medical Center.  But if you
11  can think about what you were doing the day before or
12  how you were feeling a couple days before, were you --
13  did you have a cough?
14  A.  I don't -- I don't remember how I got sick.  I just
15  know I got sick.
16  Q.  Okay.  You don't remember having a cough or a cold
17  or any pain anywhere else in your body before you got to
18  Crescent Medical Center?
19  A.  No more than I was having real bad headaches.
20  Q.  Okay.  Right.  And we'll talk about that.  Because I
21  know that's what brought you to the -- to Crescent.  Do
22  you remember when you arrived at Crescent Medical
23  Center?
24  A.  No, because I was out of it.  Mr. Carson took me.
25  Q.  Okay.  So, did you arrive there by car?

Page 32

1  A.  Uh-huh.
2  Q.  Did you all park the car and then you walked in?
3  A.  I don't remember because, like I say, I was out of
4  it.  I don't remember too much of nothing.
5  Q.  Okay.  Do you remember talking to anybody when you
6  walked into the hospital?
7  A.  No.  Mr. Carson did all the talking for me.
8  Q.  Okay.  Did you go in -- I've been in the -- in
9  there.  Did you go in and sit down in some chairs while
10  Mr. Carson went through the admissions process?
11  A.  Uh-huh.
12  Q.  Okay.  So, you didn't go up to a desk or anything
13  like that?
14  A.  (Shaking head.)
15  Q.  You went and sat down?
16  A.  (Nodding head.)
17  Q.  Okay.  Were you given papers to sign?
18  A.  Yes.
19  Q.  Did you sign any of those papers?
20  A.  No.  Mr. Carson signed all of them for me.
21  Q.  Okay.  Did he explain to you or say anything to you
22  about what was in the paperwork that he was signing on
23  your behalf?
24  A.  I -- I don't remember.  But I'm sure he did.  But I
25  don't remember.

8  (Pages 29 to 32)

Page 33

1  Q. Okay. Did he have your permission to sign for you?
2  A. Uh-huh.
3  Q. Okay. At that time, did you offer any insurance
4  information when you were -- when you guys -- when you
5  were at Crescent Medical Center on May 6th, 2016?
6  A. I don't remember.
7  Q. Do you remember if you had any kind of Medicaid or
8  any kind of coverage on that day when you went to the
9  hospital?
10  A. I don't think I did. I don't remember.
11  Q. Okay. Let me just quickly show you some admission
12  paperwork. And I understand that you weren't able to
13  sign or see them. Have you looked at your records since
14  you were -- since you left Crescent Medical Center?
15    Have you looked at any of your records from Crescent
16  Medical Center? Any of your own medical records from
17  your admission there or from the time you were presented
18  there? What that is, Ms. Moore -- can you read the top
19  of it, the line there?
20  A. Where?
21  Q. On the very top of the sheet.
22  A. Where it say Crescent Medical Center?
23  Q. Uh-huh. Does it say anything there about admission?
24  I tell you what'll be easier, here you go, I got one
25  too. If you look down, Ms. Moore, it's teeny teeny

Page 34

1  tiny, it's hard to see, but on the fourth line down
2  where it says Insurance Company and it's little teeny
3  tiny, do you see where it says TMHP; can you see that?
4  A. What you say, THMP?
5  Q. TMHP.
6  A. Oh, no.
7  Q. Do you see here? Here, it's -- if you look here --
8  I'm looking at the same thing you are. This kind of
9  fourth block down?
10  A. Oh, okay. I see it.
11  Q. Do you see that? And then, it says -- if you look
12  at the next box, it says Contract or Group Number?
13  A. Uh-huh.
14  Q. And there's a group number. Can you see those
15  numbers there?
16  A. Yeah.
17  Q. Can you read those out for me, please?
18  A. 258598301.
19  Q. Yes, ma'am. Now, is that -- is that a Medicaid
20  group number?
21  A. Uh-huh.
22  Q. And is that a Texas Medicaid group number?
23  A. I'm not for sure.
24  Q. Okay. We'll move on. But you do see that where it
25  says Insurance Company, there is -- there is reference

Page 35

1  to TMHP, which is --
2  A. What does that mean?
3  Q. You know what, I had written it down and now I don't
4  have it. I think it's Texas Medicaid Healthcare
5  Partnership. That's it: Texas Medicaid & Healthcare
6  Partnership.
7  A. Hmm.
8  Q. Okay?
9  A. Huh-uh.
10  Q. Okay. If you don't remember, you don't remember,
11  that's fine. I just wanted to ask you if you'd seen it
12  before. All right. Come on back this way. Do you
13  remember how long you waited before someone checked you
14  in or a nurse came to see you or take you back?
15  A. No, I don't remember how long it was.
16  Q. Okay. Do you remember any signage in the hospital
17  stating that doctors are independent contractors? Did
18  you see those signs anywhere?
19  A. I don't remember.
20  Q. Okay. Do you have any independent memory about the
21  nurse that first saw you and took you back?
22  A. No.
23  Q. Do you remember that his name was Nurse Pierre?
24  A. (Shaking head.)
25  Q. Okay. He was an African -- African-American man and

Page 36

1  he took care of you for most of that day. His name was
2  Nurse Pierre.
3  A. Hmm.
4  Q. Do you remember if he asked you any questions?
5  A. No.
6  Q. You don't remember him asking you things like your
7  name or how are you feeling or tell me what's wrong or
8  anything like that?
9  A. I don't remember talking to him.
10  Q. Okay. You don't remember him asking you any
11  questions about your health history at all?
12  A. Like I say, I don't remember talking to him.
13  Q. Okay. Do you remember any lab work that was done
14  that day? Do you remember having your blood drawn?
15  A. No. I don't think they did that.
16  Q. You don't remember that? Do you remember -- do you
17  remember having -- giving a urine sample?
18  A. I'm not sure.
19  Q. Okay. Do you remember if they -- did they put you
20  on a heart monitor?
21  A. No. I don't remember.
22  Q. Okay. Do you remember if you were given any
23  injections that day, like, any shots for anything?
24  A. I need to stop for a minute. I'm --
25  Q. Okay. We can take a break.

9  (Pages 33 to 36)

Page 37

1    MS. BAILEY: Off the record.
2    VIDEOGRAPHER: Okay. We're off the record at 2:32
3 p.m.
4         (Brief recess.)
5    VIDEOGRAPHER: We're back on the record at 2:42 p.m.
6 Please proceed.
7    MS. BAILEY: Okay. Thank you.
8    Q. (BY MS. BAILEY) Ms. Moore, I just want to remind
9 you to please say yes or no. Because sometimes when we
10 do uh-huh and huh-uh, it's hard -- she can't tell what
11 we're saying. So, just for the record to be clear,
12 it'll help us out later.
13    Okay, Ms. Moore, I'm going to show you -- I
14 understand that you had a headache when you were at
15 Crescent Medical Center and that it was difficult for
16 you to look at papers or anything like that.
17    So, let's look at your History of Present Illness,
18 okay? And this is when you were speaking with the
19 doctor. These are the kinds of things that he asked you
20 about. And these would be statements that you made or
21 that were recorded. Okay?
22    So, if we want to look at -- let's look at under
23 Instructions. Do you see about halfway down the page
24 where it says Instructions?
25    A. Uh-huh.

Page 38

1    Q. Okay.
2    A. Oh, yes, ma'am.
3    Q. Okay. Do you want to read to me what -- what it
4 says there? And F60, just patient, that's you, Patient
5 presents. Do you mind reading that out loud, ma'am?
6    A. Wait a minute. Which one you say it was?
7    Q. Where it says Instructions, about halfway down the
8 page.
9    A. Instructions. Instructions. Instructions. Oh,
10 where it say new -- new headache or something -- I
11 don't -- I don't -- I don't understand.
12    Q. Look here, look here in the middle, where it says
13 Review of Systems. And then, we'll go down to where it
14 says Instructions.
15    A. Oh.
16    Q. Do you see that?
17    A. Oh, okay. I see it.
18    Q. Okay. Can you read that out loud for me?
19    A. I'm going to just be honest, I can't read this.
20    Q. Okay. How about you follow along with me and I'll
21 read it and you let me know if that sounds right to you.
22    A. Uh-huh.
23    Q. Okay? It says: "F60," which is they're referring
24 to you, "presents to the ED accompanied by spouse. She
25 has a headache that began today. The historian reports

Page 39

1 the headache has worsened in the last hour, and patient
2 became disoriented, and patient is now vomiting." And
3 this was taken at 12:55. Okay?
4    A. Okay.
5    Q. "Patient states "her eyes feel like they are going
6 to burst open." Do you remember making that statement?
7    A. I don't remember.
8    Q. Okay. "And she states she has not been taking her
9 hypertension medication." Do you remember making that
10 statement?
11    A. I don't remember telling them that.
12    Q. Okay. And then, the next batch down where it says
13 Constitutional/General, it's just the next line.
14    A. Okay.
15    Q. "Patient reports nausea, vomiting, and denies fever,
16 fatigue and changes in appetite or activity." And then,
17 the next line down says: "Patient reports eye pain and
18 denies visual changes, hearing loss, nasal stuffiness,
19 sore throat, discharge or drainage."
20    Do you remember having any of those or making any of
21 those statements?
22    A. No. I don't remember that.
23    Q. Do you remember anybody asking you anything like
24 that?
25    A. No.

Page 40

1    Q. Okay.
2    MS. BAILEY: Mark that Exhibit 2.
3         (Exhibit No. 2 marked for identification.)
4    MS. BAILEY: Thank you.
5    Q. (BY MS. BAILEY) Okay. And we'll move on. If you
6 don't mind me taking that. Thank you, Ms. Moore. And
7 we stated already, you don't remember having lab work
8 done?
9    A. No, I don't.
10    Q. Okay. So, would it surprise you if I told you that
11 you had your blood drawn?
12    A. I did?
13    Q. Yes, ma'am. They -- they did a blood draw on you.
14 You also had a urinalysis done with a microbial
15 inspection, urinalysis. Let me show you here. This is
16 your blood work showing that you did have your blood
17 drawn. And those are the results.
18    A. What are the results? I don't understand these.
19    Q. Well, I know. I'm not a doctor either. But it's
20 just to show you that they did take your blood and run
21 some tests.
22    A. Hmm.
23    Q. Okay?
24    MS. BAILEY: I'll mark that Exhibit 3, please.
25         (Exhibit No. 3 marked for identification.)

10  (Pages 37 to 40)

Jewellean Moore 3/10/2017                    Jewellean Moore v. Lancaster Regional Hospital

Page 41

1    MS. BAILEY:  Thank you.
2    Q.  (BY MS. BAILEY)  And then, these are the results of
3    your urinalysis.  So, again, I -- I'm not showing it to
4    you to show -- you know, to interpret it because I -- I
5    can't interpret it either.  But just to show you that
6    they did do a urine sample and run that through their
7    automated system, through their equipment, and get those
8    results.  Are you finished reviewing that?
9    A.  Uh-huh.
10   (Exhibit No. 4 marked for identification. )
11   Q.  (BY MS. BAILEY)  Remember yes, please.
12   A.  Oh, yes.
13   Q.  Thank you very much.  Ms. Moore, do you recall
14   having a CT scan of your head?
15   A.  No, I don't remember that neither.
16   Q.  They put you in a machine and they do a scan of your
17   brain, make sure you're not having a stroke; do you
18   recall having that test taken?
19   A.  No, I don't.
20   Q.  Okay.  Let me show you the results of your CT scan,
21   to remind you that you had that done as well.  Is that
22   your name on there as a patient, Ms. Moore?
23   A.  Yes.
24   Q.  Okay.  Does that form describe you at the top?  Does
25   it have any identifying information at the top?

Page 42

1    A.  Like, what you mean?
2    Q.  Like, does it state your date of birth?
3    A.  Oh.  Yes.
4    Q.  Okay.  Does it have your Social Security number or
5    any other identifying information on it?
6    A.  I don't see nothing but my date of birth.
7    Q.  Okay.  And is that the correct date of birth?
8    A.  Uh-huh -- yes.
9    Q.  Thank you, ma'am.  I know, I do the same thing.
10   It's a habit I have, too.  And I'm sorry, let me go back
11   to this exhibit here because I needed to double check
12   that with you to make sure.  This is the intake of the
13   nurse and the doctor -- the -- excuse me, the doctor's
14   evaluation.  On the top of that sheet, does it have your
15   name?
16   A.  Yes, it does.
17   Q.  Where it says Crescent Medical Center and it says --
18   it has your name on there.  Does it have your birth date
19   as well?
20   A.  Yes.
21   Q.  And is that the correct birth date?
22   A.  Yes, it is.
23   Q.  Okay.  Thank you.
24   MS. BAILEY:  And for the record, this is the
25   Crescent Medical Center History of Present Illness.

Page 43

1    This is the historian notes signed by Dr. Emmanuel.
2    Q.  (BY MS. BAILEY)  Okay, Ms. Moore -- all right, let's
3    move on and let's talk about -- well, let me ask you
4    this:  When you went to Crescent Medical Center, did you
5    believe you were having a medical emergency?
6    A.  What do you mean?
7    Q.  Did you -- were you going there for a regular visit
8    or were you going there because you felt like you were
9    in need of emergency care?
10   A.  I went because I was having bad headaches.
11   Q.  Okay.  And had you tried to take some medication at
12   home first?
13   A.  No.
14   Q.  You didn't take any kind of --
15   A.  I don't remember taking any.
16   Q.  Okay.  Do you remember taking your blood pressure
17   before you came to Crescent Medical Center?
18   A.  No.
19   Q.  On May 6, 2016, do you remember -- did you, or to
20   your knowledge, Mr. Carson call any other doctor or
21   healthcare provider to discuss your headache?
22   A.  I don't remember.
23   Q.  Okay.  So, when you came to Crescent Medical Center,
24   you came because you had a severe headache?
25   A.  Uh-huh.

Page 44

1    Q.  Were you worried about it?
2    A.  Yes.  Because I was -- it was hurting so bad, I
3    couldn't hardly see.
4    Q.  Right.  And maybe that was your statement where you
5    said that you felt like your eyes were going to pop out
6    because there was so much pain.  On a scale of 1 to 10,
7    do you remember what you would have thought your pain
8    was?
9    A.  I would say 10.
10   Q.  It was pretty bad?
11   A.  (Nodding head.)
12   Q.  Okay.  Do you -- did you go to Crescent Medical
13   Center to have any of your medications refilled?
14   A.  I don't remember.
15   Q.  Okay.  Do you recall how long it had been since you
16   had taken your last dose of hypertension medication
17   before you came to Crescent Medical Center?
18   A.  I think that morning.  I'm not for sure.
19   Q.  You took your medication that morning?
20   A.  I think I did.  I'm not for sure.
21   Q.  Okay.  I need to find an exhibit if you'll give me
22   just one moment, please.  The records all look very
23   similar.
24   A.  Oh, you didn't give me my -- those papers with my
25   medication on it back.

11  (Pages 41 to 44)

Jewellean Moore 3/10/2017                   Jewellean Moore v. Lancaster Regional Hospital

Page 45

1   Q. Oh, I'm sorry.  I thought it was an exhibit for the
2   record.  But you may certainly have it back.
3   A. Okay. While you looking for that paper, I was
4   intending to tell you I had knee surgery two years
5   compared to that.  That's why I was hurting in my knee,
6   too.
7   Q. Oh, okay.  So, you had a knee surgery about two
8   years before you were at Crescent Medical Center in May?
9   A. Uh-huh.
10  Q. Okay.  Ms. Moore, I'm going to show you -- this is
11  Crescent Medical Center, this is the triage.  So, this
12  was Marcus Pierre, this was the nurse who initially saw
13  you.
14       And you know what, let's do this to make this
15  easier:  You stated you believed you had taken your
16  hypertension medication that day.  Can you read for me
17  the outlined portion there on the record?
18  A. Where you've got it marked?
19  Q. Yes, ma'am.
20  A. It say:  Patient husband stated that they removed
21  her and she had not been able to refill HTN --
22  Q. That's hypertension.
23  A. "Hy -- hypertension meds and had -- and have taken
24  them in a month."
25  Q. Does it say have or have not?

Page 46

1   A. Oh.  Wait a minute.  This say:  Have taken them in a
2   month or three -- I don't remember that one.
3   Q. Okay.  Well, you may not remember because it said
4   Mr. Carson stated that.  So, you didn't -- according to
5   the --
6       MR. CARSON:  Well, the accuracy of that going to be
7   challenged because I never said that.
8       MS. BAILEY:  Okay.  You don't speak on the record,
9   Mr. Carson.
10      MR. CARSON:  You think this is annoying you and --
11  you know, because that's the thing, what this is and --
12  you know, it's oppressing and annoying you.  Because all
13  she's doing is want you to verify documents instead of
14  really deposing you.
15      MS. BAILEY:  Mr. Carson --
16  Q. (BY MS. BAILEY)  Ms. Moore, actually, I'll speak to
17  you because you're the one I'm deposing here.  This is
18  the way a deposition goes.  Now, when it's your turn and
19  you're asking anybody that you want to ask of my clients
20  --
21  A. Well, I want to --
22      THE WITNESS:  What you call it?
23      MR. CARSON:  Terminate it.
24  A. Terminate.
25  Q. (BY MS. BAILEY)  Okay.

Page 47

1   A. I can't --
2   Q. All right.  But before you do, Ms. Moore, I just
3   want to explain to you that we will seek a court order
4   and you'll have to come to Dallas.  Okay?
5   A. Okay.
6   Q. All right.  As long as you understand that?
7       THE WITNESS:  Where my purse?
8       VIDEOGRAPHER:  We're ready to go off the record?
9       MS. BAILEY:  One moment.
10          (Ms. Moore gets up and leaves.)
11      MS. BAILEY:  Yeah, we're off the record.  Thank you.
12      VIDEOGRAPHER:  Okay.  This will complete the
13  deposition.  We're off the record at 2:56 p.m.
14
15
16
17
18
19
20
21
22
23
24
25

Page 48

1           REPORTER'S CERTIFICATION
2       VIDEOTAPED DEPOSITION OF JEWELLEAN MOORE
3               MARCH 10, 2017
4
5       I, CRYSTAL GARRISON, Certified Shorthand Reporter
6   in and for the State of Arkansas, hereby certify to the
7   following:
8       That the witness was duly sworn by the officer and
9   that the transcript of the Videotaped Deposition is a
10  true record of the testimony given by the witness;
11      I further certify that I am neither counsel for,
12  related to, nor employed by any of the parties or
13  attorneys in the action in which this proceeding was
14  taken, and further that I am not financially or
15  otherwise interested in the outcome of the action.
16      Certified to by me this _____ day of _____,
17  2017.
18
19
20
21
22      _____
        Crystal Garrison, CCR # 613
23      Bushman Court Reporting
        620 West Third Street, Suite 302
24      Little Rock, Arkansas 72201
        (501) 372-5115
25

12  (Pages 45 to 48)

Crystal Garrison, CCR

Jewellean Moore 3/10/2017

Jewellean Moore v. Lancaster Regional Hospital

Page 49

---

**A**

ability 6:8
able 29:22,23
  30:3,5 33:12
  45:21
above-styled
  1:15
accompanied
  38:24
accuracy 46:6
action 48:13,15
  19:7
activities 28:22
  29:3
activity 29:12
  39:16
Addison 2:5
address 10:18
  19:4
adjudicate
  17:20
admission 33:11
  33:17,23
admissions
  32:10
admitted 12:8
advise 17:24,25
affect 6:8
African 35:25
African-Amer...
  35:25
afternoon 4:20
ages 10:8
ago 9:22 19:16
  20:6 21:6,7
agree 5:23
agreement
  16:21 17:1,4,5
  18:17,18
aisle 30:5
allowed 20:21
annoy 17:16
annoying 46:10
  46:12
annual 11:14
answer 7:13

8:13
answers 7:20
anybody 32:5
  39:23 46:19
anymore 21:21
apart 22:19
  23:10
appearance 4:9
appetite 39:16
apply 27:2
appointments
  24:9
April 15:9 19:3
area 10:13,23
  11:9 12:11
  13:1,3,18 14:7
  27:10
Arkansas 1:18
  1:20 4:4 10:11
  10:24 11:4
  24:3 26:21
  27:19 48:6,24
arrive 31:25
arrived 31:22
Arthur 2:9
  15:10
asked 36:4 37:19
asking 6:18,20
  18:7 36:6,10
  39:23 46:19
Associates 16:22
attacks 21:3
attorney 2:3
  8:13
attorneys 48:13
automated 41:7
awaiting 26:4
aware 9:3 14:24

**B**

back 5:9,20,21
  9:19 10:24
  11:3,11 13:2,7
  13:8,12,16
  23:1 27:7,11
  28:8,18 29:25
  30:4 35:12,14

35:21 37:5
42:10 44:25
45:2
background
  7:23
bacterial 22:24
bad 23:22 31:19
  43:10 44:2,10
Bailey 2:4 3:3
  4:10,10,19 5:8
  5:12 17:11,19
  17:25 18:3,14
  18:16 37:1,7,8
  40:2,4,5,24
  41:1,2,11
  42:24 43:2
  46:8,15,16,25
  47:9,11
basis 29:25
batch 39:12
Baylor 10:25
  11:3 22:20
  23:12,18 26:5
began 38:25
behalf 32:23
believe 43:5
believed 45:15
benefits 11:24
  12:4 26:18,22
  27:11 28:9,11
big 21:18
birth 9:13 42:2,6
  42:7,18,21
bit 10:22 15:5
  28:19
bladder 23:3
block 34:9
blood 3:14 19:25
  20:3,25 30:22
  30:23,25 31:4
  36:14 40:11,13
  40:16,16,20
  43:16
body 31:17
born 9:15
box 34:12
brain 41:17

break 5:18,19
  36:25
breaks 5:25
Brief 37:4
bringing 21:17
Brisa 16:22
brought 13:5
  31:21
burst 39:6
Bushman 1:19
  4:3 48:23

**C**

C 2:1
C-sections 22:18
call 43:20 46:22
called 23:5
car 31:25 32:2
care 15:3 24:6
  26:2 36:1 43:9
Carson 2:9 7:13
  8:8,9 9:8 15:10
  15:19,21 17:4
  17:9,11,13,23
  18:2,14 29:6
  31:24 32:7,10
  32:20 43:20
  46:4,6,9,10,15
  46:23
case 4:7 8:5
  14:20,22 15:25
  16:3,10,19
  17:8,18
cause 1:15
CCR 48:22
cell 25:17
Center 1:6 4:6
  8:25 9:6 10:25
  12:10 15:3
  19:12 22:21
  23:11 24:17
  30:11,16 31:10
  31:18,23 33:5
  33:14,16,22
  37:15 42:17,25
  43:4,17,23
  44:13,17 45:8

45:11
certain 17:16
  18:7 31:5
certainly 45:2
Certificate 3:5
CERTIFICA...
  48:1
Certified 1:17
  48:5,16
certify 48:6,11
chairs 32:9
challenged 46:7
changes 39:16
  39:18
check 7:23 28:14
  28:15 42:11
checked 35:13
checkups 24:21
children 10:6,15
  13:13
church 29:1
Civil 1:21
claim 6:19
claims 15:14
clear 6:12 37:11
clearly 6:5
client 7:1
clients 46:19
co-pay 28:3
cold 29:10 31:16
come 5:20 28:18
  35:12 47:4
coming 11:25
Company 34:2
  34:25
compared 45:5
complete 47:12
confidential
  18:18
confidentiality
  16:21,25 17:3
  17:4,9
Constitutional...
  39:13
continuation
  17:23
Contract 34:12

Jewellean Moore 3/10/2017          Jewellean Moore v. Lancaster Regional Hospital

Page 50

**contractors** 35:17
**Cooley** 2:4 4:10
**copy** 15:11
**correct** 42:7,21
**cost** 27:20
**cough** 31:13,16
**counsel** 4:9 48:11
**country** 21:10
**couple** 16:10 31:12
**court** 1:1,17,19 4:3,7,8 5:9 6:5 8:13 16:19 47:3 48:23
**courts** 16:1
**coverage** 33:8
**Crescent** 1:6 4:6 8:25 9:6 10:24 12:9 15:3 19:12 23:11 30:11,16 31:10 31:18,21,22 33:5,14,15,22 37:15 42:17,25 43:4,17,23 44:12,17 45:8 45:11
**criminal** 7:11
**critical** 15:3
**Crystal** 1:17 4:8 48:5,22
**CT** 41:14,20
**current** 10:18 21:22
**currently** 9:24 13:25 20:14 22:1,5 24:6

**D**
**D-E-E-P-A** 24:15
**d/b/a** 1:5
**daily** 22:2 29:11 29:25
**Dallas** 1:2 2:5

4:11 9:16 10:13,23,23 11:8 12:11 14:7 18:10 21:12,13 25:11 30:9,19 47:4
**date** 9:12 12:14 29:6 42:2,6,7 42:18,21
**daughter** 13:23 14:22
**daughter's** 14:24
**day** 19:21 20:9 20:16,18,19,21 20:21,24 30:25 31:11 33:8 36:1,14,23 45:16 48:16
**days** 21:9 28:7 31:12
**Deepa** 24:13,20 24:23
**Deepa's** 25:2 26:2
**defend** 6:25
**DEFENDANT** 1:6 2:3
**Defendants** 1:14
**denies** 39:15,18
**deposed** 5:3 8:9
**deposing** 46:14 46:17
**deposition** 1:8 1:13 3:12 4:5 5:1,22 7:4 8:6 8:16 18:4 46:18 47:13 48:2,9
**depositions** 17:24
**describe** 41:24
**DESCRIPTION** 3:11
**desk** 32:12
**determination** 18:1

**diabetes** 19:13 19:15,17,24 20:5 22:6
**diagnosed** 19:14 20:2 22:21
**diary** 8:23
**different** 11:15 14:9,15 25:22 28:17
**difficult** 37:15
**disability** 10:1
**disabled** 9:25
**discharge** 39:19
**discharged** 11:2
**discuss** 43:21
**Dismissal** 16:16
**dismissed** 16:4
**disoriented** 39:2
**District** 1:1,1 4:7
**DIVISION** 1:2
**doctor** 24:9,16 28:13 30:21 37:19 40:19 42:13 43:20
**doctor's** 42:13
**doctors** 13:21 27:6 35:17
**document** 16:13 16:15
**documents** 7:3,7 46:13
**doing** 31:11 46:13
**dose** 44:16
**double** 42:11
**Dr** 24:13,20,23 25:2 26:2 43:1
**drainage** 39:19
**draw** 3:14 40:13
**drawn** 36:14 40:11,17
**duly** 1:14 4:17 48:8

**E**
**E** 2:1,1

**easier** 33:24 45:15
**eat** 29:1
**ED** 38:24
**eight** 11:5,6
**either** 14:11 40:19 41:5
**embarrass** 6:24
**emergency** 23:13,20 24:1 24:3 43:5,9
**Emmanuel** 43:1
**employed** 48:12
**enroll** 26:13
**entire** 5:16
**equipment** 41:7
**evaluation** 42:14
**events** 7:15 8:23
**exact** 12:14
**exactly** 26:14
**Examination** 3:3 4:18
**example** 8:25 27:18
**excuse** 9:7 42:13
**exhibit** 3:10 5:8 5:11 40:2,3,24 40:25 41:10 42:11 44:21 45:1
**expect** 6:23
**explain** 32:21 47:3
**extra** 29:19
**eye** 39:17
**eyes** 39:5 44:5

**F**
**F60** 38:4,23
**fabric** 29:19
**facilities** 14:7
**facility** 14:11
**family** 13:20 28:20,23,24
**fatigue** 39:16
**federal** 1:21 16:19

**feel** 24:25 25:17 31:5,7 39:5
**feeling** 9:1 25:1 31:8,12 36:7
**felt** 43:8 44:5
**fever** 39:15
**file** 15:23,23 18:10
**filed** 15:8,24 19:3
**filing** 15:12
**filings** 16:11
**financially** 48:14
**find** 13:17 44:21
**fine** 6:14 9:12 17:21 18:18 35:11
**finished** 41:8
**Firm** 4:10
**first** 4:17 8:16 22:23 26:13 30:10 35:21 43:12
**five** 10:3,19 12:25 13:1,6 30:17
**focus** 15:5
**follow** 38:20
**following** 48:7
**follows** 4:17
**forget** 31:2
**forgot** 7:17
**forgotten** 30:24
**form** 41:24
**forth** 30:4
**four** 30:17
**fourth** 34:1,9
**free** 27:22,24 28:1,2
**friends** 28:23
**front** 5:15 16:19
**funds** 18:21,22
**further** 48:11,14

**G**
**Garrison** 1:17

Jewellean Moore 3/10/2017                    Jewellean Moore v. Lancaster Regional Hospital

4:8 48:5,22
getting 25:12
   31:5
give 16:11 44:21
   44:24
given 32:17
   36:22 48:10
giving 36:17
go 5:19 6:2 9:19
   10:21 13:7
   14:10 17:10
   18:8 21:16,18
   23:17,17 25:9
   25:12 26:1
   28:13 29:1,1,5
   29:5,7,19,22
   29:23,23 30:4
   30:18 32:8,9
   32:12 33:24
   38:13 42:10
   44:12 47:8
goes 14:8,14,15
   14:15,16 46:18
going 5:13 6:1
   6:20 7:8,20
   13:23 15:5
   17:14,23 18:6
   18:12 21:19
   31:9 37:13
   38:19 39:5
   43:7,8 44:5
   45:10 46:6
good 4:20,25 5:7
   13:5,25,25
grand 29:16
grocery 29:23
   30:5
group 34:12,14
   34:20,22
guess 11:5 20:4
guys 33:4

H
habit 42:10
halfway 37:23
   38:7
handing 5:8

happened 9:5
harass 6:24
   17:15
hard 34:1 37:10
head 10:5 11:10
   11:20 12:3,7
   12:18 13:4
   14:23 15:22
   16:9 20:7
   25:15 27:25
   30:6,15 32:14
   32:16 35:24
   41:14 44:11
headache 25:3
   37:14 38:10,25
   39:1 43:21,24
headaches 23:22
   31:19 43:10
health 36:11
healthcare
   13:20 26:24
   35:4,5 43:21
healthy 30:22,22
hearing 17:20
   18:9 39:18
heart 21:3 36:20
help 7:13,19
   25:21 37:12
helped 15:19
   27:7
hepatitis 21:21
Hernandez
   16:22
hernia 22:15
high 20:3,25
   31:5
historian 38:25
   43:1
history 6:21,22
   19:11 36:11
   37:17 42:25
Hmm 35:7 36:3
   40:22
home 25:6 43:12
honest 38:19
hospital 1:5 8:24
   11:3 21:7,13

21:15 25:10
26:1,5 30:10
30:18 32:6
33:9 35:16
hospitalization
   22:20
hospitalized
   23:7
hospitals 14:6
   14:16
hot 29:9,11
hour 39:1
hours 5:23,24
   6:1
house 13:11
   29:13 30:4
housekeeping
   5:13
housing 13:10
   13:17
HTN 45:21
huh-uh 24:5
   29:4 30:12,20
   35:9 37:10
hurting 44:2
   45:5
husband 45:20
Hy 45:23
hypertension
   20:3,8,13 22:2
   27:19 28:1
   39:9 44:16
   45:16,22,23

I
identification
   5:11 40:3,25
   41:10
identifying
   41:25 42:5
Illness 37:17
   42:25
income 11:14,21
   12:6
Incorporated
   16:23
independent

35:17,20
INDEX 3:1,10
infection 23:3,4
infections 22:25
information
   33:4 41:25
   42:5
initially 45:12
injections 19:19
   36:23
inspection 40:15
instance 1:14
Instructions
   37:23,24 38:7
   38:9,9,9,14
insulin 19:17,25
   20:9 22:2,6
   28:2
insurance 33:3
   34:2,25
intake 42:12
intending 45:4
interested 48:15
interns 14:12
interpret 41:4,5
issue 17:17,17
it'll 37:12

J
J-E-W-E-L-L-...
   4:23
Jewellean 1:3,9
   1:13 3:3 4:5,5
   4:16,23 15:10
   48:2
judge 5:15
July 9:14
jury 5:15

K
keep 6:1 8:22
   18:7,12
kids 13:15 22:17
kind 7:19,23 8:1
   8:20,23 9:3
   15:13 17:20
   22:24 25:6

30:13 31:7,7
33:7,8 34:8
43:14
kinds 6:22,25
   28:21,22 29:12
   37:19
knee 45:4,5,7
know 5:14 6:13
   11:2,13 12:15
   14:3,11 16:3
   16:15 17:3
   19:13 25:19,20
   27:14,20 31:8
   31:15,21 35:3
   38:21 40:19
   41:4 42:9
   45:14 46:11,12
knowledge
   43:20

L
L.P 1:5
lab 3:14 13:21
   36:13 40:7
Lancaster 1:5,6
   4:6
Law 4:10
lawsuit 8:17,20
   15:8,12,15,17
   15:21,23
lawsuits 15:6
   18:25,25 19:7
leaves 47:10
left 18:22 33:14
Legal 4:2
length 5:21
let's 9:19 18:12
   19:10 23:15
   37:17,22 43:2
   43:3 45:14
lightheaded
   31:7
liked 28:21
line 33:19 34:1
   39:13,17
little 1:20 4:4
   10:18 11:11

Crystal Garrison, CCR

Jewellean Moore 3/10/2017                  Jewellean Moore v. Lancaster Regional Hospital

Page 52

12:19 13:1,3
15:5 24:4,4,18
27:9 28:19
34:2 48:24
live 10:11,13
12:23
lived 10:20,21
12:22,23,25
19:2,4,5
living 10:23
12:10,12,13
21:10 28:20
LLP 2:4
Lomas 16:22
long 5:20 6:2
10:1,17 11:2
12:13 27:8,10
28:8 35:13,15
44:15 47:6
look 7:12,14,18
33:25 34:7,11
37:16,17,22,22
38:12,12 44:22
looked 7:6 33:13
33:15
looking 7:23 8:4
28:20 34:8
45:3
Los 16:22
loss 39:18
lot 6:19 9:8,11
15:19 21:18,18
loud 38:5,18
low 31:5
LVN 14:3,5

**M**
**M-O-O-R-E**
4:24
ma'am 6:16 7:2
9:15 10:2
26:11 34:19
38:2,5 40:13
42:9 45:19
machine 1:18
41:16
Madame 4:12

making 5:16
39:6,9,20
malpractice
6:19
man 35:25
March 1:10,16
4:2 48:3
Marcus 45:12
mark 40:2,24
marked 5:11
40:3,25 41:10
45:18
market 29:22
matter 4:5 16:11
mbailey@sche...
2:6
mean 10:9 11:23
13:9 35:2 42:1
43:6
means 16:18
Medicaid 26:12
26:13,18,22,24
27:2,5,11,16
27:18 28:6,8
28:11,15 33:7
34:19,22 35:4
35:5
medical 1:6 3:13
4:6 6:19,21 7:6
7:14 8:25 9:6
10:25 12:9
14:1,6,19,25
15:3 19:10,11
19:12 22:20
23:11 24:17
25:13 30:7,11
30:16 31:10,18
31:22 33:5,14
33:16,16,22
37:15 42:17,25
43:4,5,17,23
44:12,17 45:8
45:11
medication 20:1
20:8,13,16
21:17 22:9
27:19 28:1

39:9 43:11
44:16,19,25
45:16
medications 6:7
19:23 20:24
21:1,23 22:4
44:13
medicine 22:7
meds 45:23
members 13:20
memory 15:12
17:16 25:22
35:20
Mesquite 12:12
12:13,19,22,23
12:24 13:2
19:4 27:10
Methodist 14:17
microbial 40:14
middle 38:12
Mike 4:2
mind 5:8 7:12
15:7 38:5 40:6
minute 36:24
38:6 46:1
moment 16:11
44:22 47:9
money 11:25
28:15
Monica 2:4 4:10
monitor 36:20
month 24:24,24
27:13,14 45:24
46:2
Monthly 11:19
months 10:19
11:5,6,9 12:15
12:16,17,22
13:2 27:13
28:7 30:17
Moore 1:3,9,13
3:3 4:5,6,16,20
4:23,23,25 5:4
5:5,12 6:7,18
9:12 10:6
11:22 15:10
16:12 18:3

21:2 33:18,25
37:8,13 40:6
41:13,22 43:2
45:10 46:16
47:2,10 48:2
morning 44:18
44:19
mother-in-law
29:16
motion 18:10
move 8:3,5
17:22 18:5,6
18:18 34:24
40:5 43:3
moved 10:20
11:3 12:24,25
13:2,2,8,12,16
26:20 27:1,5,9
28:5
muscles 25:19

**N**
N 2:1
name 4:21 24:11
35:23 36:1,7
41:22 42:15,18
named 8:20 15:7
nasal 39:18
nausea 39:15
near 24:4
necessarily 6:20
need 5:18,19,20
6:25 17:20,24
18:3,7 20:16
20:22 22:8
25:4,14 30:1
36:24 43:9
44:21
needed 30:3
42:11
neither 41:15
48:11
nepripene 20:15
22:1
never 8:20 28:11
46:7
new 38:10,10

Nodding 10:5
11:10,20 12:3
12:7,18 13:4
15:22 20:7
25:15 27:25
30:6 32:16
44:11
**NORTHERN**
1:1
notes 8:22 43:1
notice 3:12 5:1,4
number 34:12
34:14,20,22
42:4
numbered 1:15
numbers 34:15
nurse 13:21,24
14:4 35:14,21
35:23 36:2
42:13 45:12
nurses 13:21

**O**
oath 5:14 8:14
occupation 9:17
9:18,20
offer 33:3
office 25:2
officer 48:8
offices 1:19
Oh 13:25 23:9
34:6,10 38:2,9
38:15,17 41:12
42:3 44:24
45:1,7 46:1
okay 5:7,16,21
5:24 6:2,4,11
6:15 7:1,18 8:1
8:3,9,16,16,22
9:3,10,12,15
9:19,23 10:1,6
10:11,17 11:8
11:13,21 12:8
12:15,22 13:1
13:5,9,13,17
13:20 14:6,17
14:19,24 15:2

Jewellean Moore 3/10/2017      Jewellean Moore v. Lancaster Regional Hospital

Page 53

15:5,14,21,25
16:3,6,10,12
16:15,18 17:7
17:11,12,19,25
18:6,8,11,15
18:19,24 19:2
19:7,10,11,17
19:19,23 20:2
20:13,20,24
21:2,5,16,16
21:22,25 22:8
22:11,13,16,19
23:4,7,10,20
23:23 24:6,11
24:16,20,23
25:1,6,9,13,16
25:24 26:4,10
26:15,17,20
27:1,4,8,16
28:5,16,18
29:1,9,22,25
30:3,7,16,21
30:25 31:4,8
31:16,20,25
32:5,8,12,17
32:21 33:1,3
33:11 34:10,24
35:8,10,16,20
35:25 36:10,13
36:19,22,25
37:2,7,13,18
37:21 38:1,3
38:17,18,20,23
39:3,4,8,12,14
40:1,5,10,23
41:20,24 42:4
42:7,23 43:2
43:11,16,23
44:12,15,21
45:3,7,10 46:3
46:8,25 47:4,5
47:12
once 20:18,19,20
20:21,24 24:24
ones 23:15
open 39:6
oppressing

46:12
order 47:3
outcome 48:15
outlined 45:17

**P**

P 2:1,1
p.m 1:16 4:1
37:3,5 47:13
page 3:2,11,15
5:2 15:9,9
37:23 38:8
pages 3:12,13,14
pain 22:9 31:17
39:17 44:6,7
paper 45:3
papers 7:7,19
32:17,19 37:16
44:24
paperwork
32:22 33:12
park 29:5,7 32:2
Parkland 14:13
Parkway 2:5
part 17:9
particular 15:8
parties 48:12
**Partnership**
35:5,6
patient 38:4,4
39:1,2,5,15,17
41:22 45:20
pay 27:16
permission 33:1
personal 6:20,21
8:23
pertaining 8:5
phonetic 20:15
physical 25:9,14
25:21,25 29:11
30:8,14
physician 24:7
24:11
Pierre 35:23
36:2 45:12
place 28:21
places 14:15

plaintiff 1:3 15:7
19:8
plan 27:22 28:2
planning 25:25
please 4:9,12,15
4:22 6:4,13
9:13 24:12
34:17 37:6,9
40:24 41:11
44:22
pop 44:5
portion 45:17
possible 17:19
18:17
practice 14:13
practices 14:12
prepare 7:3,7
8:6
prescription
25:4
prescriptions
27:16
Present 2:8
37:17 42:25
presented 12:9
19:12 23:10
31:10 33:17
presents 38:5,24
pressure 19:25
20:3,25 30:22
30:23,25 31:5
43:16
pretty 44:10
prevented 10:2
probably 21:19
Procedure 1:21
proceed 4:15
37:6
proceeding 5:17
48:13
process 32:10
produced 1:13
profession 14:1
professional
25:14
professionals
13:21 14:19

proper 13:10
provider 43:21
purse 47:7
pursuant 1:20
put 17:14 36:19
41:16

**Q**

question 6:11,12
questions 4:19
6:9,19,21,22
6:25 7:13 8:13
18:7 36:4,11
quickly 33:11
quilting 29:17
quilts 29:14,17

**R**

R 2:1
range 30:23
reached 16:20
read 33:18 34:17
38:3,18,19,21
45:16
reading 30:22
38:5
ready 25:12 47:8
real 15:9,9 31:19
really 46:14
RealPage 16:23
Realpage.com
15:10
reason 9:23 25:7
25:9 30:19
recall 6:8 17:7
19:4 24:1
41:13,18 44:15
receive 5:3
received 18:24
26:18 28:11
receiving 12:4
25:6 26:22
recess 37:4
recognize 5:4,5
16:12
record 3:13 4:1
4:9,21 5:16,19

5:21,24 17:12
17:14 18:15
37:1,2,5,11
42:24 45:2,17
46:8 47:8,11
47:13 48:10
recorded 37:21
recordings 9:3
records 7:6,14
7:24 8:1 14:25
19:11 25:11
26:4 33:13,15
33:16 44:22
reenroll 27:2
28:6
reenrolled 27:4
reference 34:25
referring 38:23
refill 45:21
refilled 25:4
44:13
refresh 15:11
regarding 16:21
REGIONAL 1:5
registered 14:4
regular 24:9
43:7
related 48:12
remember 7:22
8:1,3 9:11
12:14 15:12,13
16:7,8,14,24
16:25 17:6,21
18:5,6,8,13,13
18:16 19:6,14
21:13,15 23:2
23:7,15,16,16
23:18,20 26:10
26:14 27:4,8
27:10,13,15
31:14,16,22
32:3,4,5,24,25
33:6,7,10
35:10,10,13,15
35:16,19,23
36:4,6,9,10,12
36:13,14,16,16

Crystal Garrison, CCR

Jewellean Moore 3/10/2017                    Jewellean Moore v. Lancaster Regional Hospital

Page 54

| | | | | |
|---|---|---|---|---|
| 36:17,19,21,22<br>39:6,7,9,11,20<br>39:22,23 40:7<br>41:11,15 43:15<br>43:16,19,22<br>44:7,14 46:2,3<br>**remind** 7:14<br>37:8 41:21<br>**reminder** 5:14<br>**removed** 45:20<br>**repaired** 22:17<br>**reported** 1:18<br>**reporter** 1:17<br>4:8,12 5:9 6:5<br>8:14 48:5<br>**Reporter's** 3:5<br>48:1<br>**Reporting** 1:19<br>4:3 48:23<br>**reports** 38:25<br>39:15,17<br>**require** 30:1<br>**residing** 10:17<br>13:13<br>**respond** 6:9<br>**response** 8:2<br>**restate** 6:13,15<br>**results** 3:14,15<br>40:17,18 41:2<br>41:8,20<br>**resume** 18:10<br>**returned** 10:24<br>11:11<br>**Review** 38:13<br>**reviewed** 7:3<br>**reviewing** 41:8<br>**REY** 2:4<br>**ribavirin** 21:19<br>21:20<br>**Ribir** 21:19<br>**Richardson**<br>14:16,17<br>**right** 6:12 7:18<br>9:17,17 11:14<br>13:8,9,10 14:2<br>14:11 17:15<br>18:9,16 19:10 | 21:20,25 31:20<br>35:12 38:21<br>43:2 44:4 47:2<br>47:6<br>**Rock** 1:20 4:4<br>10:18 11:11<br>12:19 13:1,3<br>24:4,4,18 27:9<br>48:24<br>**room** 23:13,21<br>24:1,3<br>**rules** 1:21 5:23<br>**run** 40:20 41:6<br><br>**— S —**<br><br>**S** 2:1<br>**sample** 36:17<br>41:6<br>**sat** 32:15<br>**saw** 35:21 45:12<br>**saying** 6:14,15<br>7:24 37:11<br>**says** 34:2,3,11<br>34:12,25 37:24<br>38:4,7,12,14<br>38:23 39:12,17<br>42:17,17<br>**scale** 44:6<br>**scan** 41:14,16,20<br>**Schell** 2:4 4:10<br>**school** 14:2,3<br>**Scott** 23:12<br>**scraps** 29:19<br>**Security** 11:24<br>12:6 42:4<br>**see** 17:15 24:20<br>24:23 28:25<br>33:13 34:1,3,3<br>34:7,10,11,14<br>34:24 35:14,18<br>37:23 38:16,17<br>42:6 44:3<br>**seek** 47:3<br>**seen** 16:12 35:11<br>**sepsis** 22:21,22<br>**settle** 18:17<br>**settled** 16:3 | **settlement** 16:20<br>16:22 17:7<br>18:21,21<br>**settlements**<br>18:24<br>**seven** 5:23<br>**severe** 22:24<br>43:24<br>**Shaking** 14:23<br>16:9 30:15<br>32:14 35:24<br>**sheet** 33:21<br>42:14<br>**shift** 15:5<br>**shopping** 29:23<br>**shorthand** 1:18<br>48:5<br>**shots** 36:23<br>**show** 5:1 15:11<br>33:11 37:13<br>40:15,20 41:4<br>41:5,20 45:10<br>**showing** 40:16<br>41:3<br>**sic** 24:17<br>**sick** 31:14,15<br>**sign** 16:21 32:17<br>32:19 33:1,13<br>**signage** 35:16<br>**signed** 17:3,4<br>18:17 32:20<br>43:1<br>**signing** 16:25<br>32:22<br>**signs** 35:18<br>**similar** 44:23<br>**sit** 32:9<br>**situation** 8:12<br>13:17 17:14<br>**six** 5:23,24 6:1<br>10:19<br>**Social** 11:24<br>12:6 42:4<br>**somebody** 9:4<br>15:17 18:17<br>**son** 10:10<br>**sore** 39:19 | **sorry** 12:9 16:11<br>21:19 42:10<br>45:1<br>**sounds** 38:21<br>**source** 11:21<br>**sources** 11:15<br>**speak** 17:11<br>18:14 46:8,16<br>**speaking** 37:18<br>**Specialist** 4:3<br>**specific** 8:5<br>**speech** 25:19<br>**spell** 4:22 24:14<br>**spoken** 8:6<br>14:19,22 15:2<br>**spouse** 38:24<br>**SSI** 12:1,2<br>**stable** 14:10<br>**staph** 23:4<br>**start** 27:11 28:8<br>**started** 4:25<br>25:11 27:7<br>**state** 1:18 4:9,21<br>9:12 42:2 48:6<br>**stated** 19:2,3<br>40:7 45:15,20<br>46:4<br>**statement** 39:6<br>39:10 44:4<br>**statements**<br>37:20 39:21<br>**states** 1:1 4:7<br>16:20 26:17<br>39:5,8<br>**stating** 35:17<br>**stay** 13:18<br>**stayed** 11:8 21:8<br>**stick** 21:25<br>**stipulation**<br>16:16,18<br>**stop** 36:24<br>**store** 29:19,23<br>30:5<br>**Street** 1:20 4:4<br>48:23<br>**strike** 28:18<br>**stroke** 21:6,11 | 41:17<br>**strokes** 21:5<br>**stuff** 29:14<br>**stuffiness** 39:18<br>**subject** 8:17<br>**sued** 8:18<br>**suit** 19:3<br>**Suite** 1:20 2:5<br>48:23<br>**sure** 5:2 16:2<br>19:13 23:6<br>24:21 32:24<br>34:23 36:18<br>41:17 42:12<br>44:18,20<br>**surgeries** 22:11<br>**surgery** 22:13<br>22:14 45:4,7<br>**surprise** 40:10<br>**swear** 4:13<br>**sworn** 1:15 4:14<br>4:17 48:8<br>**symptoms** 25:2<br>31:9<br>**system** 41:7<br>**Systems** 38:13<br><br>**— T —**<br><br>**take** 4:4 5:18,19<br>5:20,25 19:17<br>19:19,23 20:2<br>20:16,20,21,25<br>22:6,8,9 25:2<br>28:7 30:25<br>31:1,2,2 35:14<br>36:25 40:20<br>43:11,14<br>**taken** 1:15 5:25<br>39:3 41:18<br>44:16 45:15,23<br>46:1 48:14<br>**talk** 7:8 15:6<br>19:10 23:15<br>31:9,20 43:3<br>**talked** 30:21<br>**talking** 5:15<br>23:23 30:17 |

32:5,7 36:9,12
tech 13:21,21
teeny 33:25,25
  34:2
tell 7:10 19:14
  24:11 25:16,18
  26:12 28:19,21
  31:4 33:24
  36:7 37:10
  45:4
telling 39:11
ten 10:3,4
terminate 17:24
  18:4,9 46:23
  46:24
test 41:18
testified 4:17
testimony 48:10
tests 40:21
Texas 1:1 2:5
  9:16 13:6 19:2
  24:2 26:19,20
  27:1,2,5 28:5,8
  28:12,20 29:11
  34:22 35:4,5
Thank 4:15,20
  5:9 6:7 13:5
  21:17 26:12
  37:7 40:4,6
  41:1,13 42:9
  42:23 47:11
therapies 30:8
therapy 25:9,14
  25:19,21,25
  30:9,14
they'd 28:14
thing 34:8 42:9
  46:11
things 5:13 9:4,5
  9:8 13:7,9,11
  14:9 15:19
  17:16 23:22
  24:21 25:22
  28:17,21 29:12
  29:15,20 36:6
  37:19
think 7:19 12:21

14:5,14,14
15:8 16:10
23:5 24:15
27:6 31:11
33:10 35:4
36:15 44:18,20
46:10
Third 1:19 4:4
  48:23
THMP 34:4
thought 13:7
  44:7 45:1
three 10:7,15
  21:9 28:7
  30:17 46:2
throat 39:19
time 5:18,22,25
  6:17 9:6,9
  12:11 13:14
  17:21 19:8
  20:4 22:23
  23:16,23 24:2
  30:10 33:3,17
tiny 34:1,3
TMHP 34:3,5
  35:1
today 5:3 6:8 7:4
  7:8,20 8:7
  38:25
told 25:14 40:10
top 33:18,21
  41:24,25 42:14
trained 9:20
transcript 48:9
treatments 30:7
triage 45:11
tried 13:17
  43:11
true 48:10
trying 13:11,23
  17:15 25:21
Tscheimer 4:2
turn 46:18
twice 24:24
twins 10:9
two 21:8 26:16
  26:17 27:13,14

28:7 45:4,7
type 6:5 8:22

_____
U
_____
uh-huh 5:6 6:3
  11:18 19:20
  20:10,12,17
  22:3,8 23:25
  24:10,19 26:3
  26:6,9,25
  29:16,18,24
  32:1,11 33:2
  33:23 34:13,21
  37:10,25 38:22
  41:9 42:8
  43:25 45:9
UM 24:17
UMAS 24:17
undergoing
  30:13
understand 6:2
  6:11,17 15:20
  16:16 17:13
  18:2,4 28:6
  33:12 37:14
  38:11 40:18
  47:6
United 1:1 4:6
University 10:25
  11:3 22:20
  26:5
urinalysis 3:15
  40:14,15 41:3
urine 36:17 41:6

_____
V
_____
verify 46:13
versus 4:6 15:9
  15:10
Video 4:2
VIDEOGRAP...
  4:1,12,15 37:2
  37:5 47:8,12
Videotaped 1:8
  1:13 48:2,9
viewed 14:25
visit 24:4 26:7

43:7
visits 24:1 25:6
visual 39:18
vomiting 39:2
  39:15
VS 1:4

_____
W
_____
Wait 38:6 46:1
waited 35:13
walk 10:22 30:3
  30:5
walked 32:2,6
walking 25:19
  29:5
want 5:1 15:6
  37:8,22 38:3
  46:13,19,21
  47:3
wanted 13:7
  35:11
wasn't 9:9 13:8
  13:10,10 29:9
  29:10
way 31:6 35:12
  46:18
we'll 5:12,16,19
  5:22 6:1 8:3,5
  10:21,22 18:9
  18:10,10,18
  21:25 31:20
  34:24 38:13
  40:5
we're 4:3 5:21
  17:14 23:23
  31:9 37:2,5,11
  47:8,11,13
went 23:11,18
  23:18,20 30:10
  30:16 32:10,15
  33:8 43:4,10
weren't 13:9
  30:13,13 33:12
West 1:19 4:3
  48:23
wheelchair 30:1
Whereabouts

21:10
White 23:12
witness 1:14
  4:13,14 46:22
  47:7 48:8,10
wondering 8:4
words 21:18
work 9:21 13:11
  13:18 14:10
  36:13 40:7,16
working 9:24
  10:2 11:13
  14:1,6,8
worried 44:1
worsened 39:1
write 8:25 9:4
  15:14,17
written 35:3
wrong 24:22
  36:7
wrote 15:21

_____
X
_____

_____
Y
_____
Yeah 11:7 14:18
  27:23 29:10
  34:16 47:11
year 13:2 26:8
  26:16,17
years 9:19,22
  10:3,4 12:15
  12:25 13:6
  19:16 20:6,11
  21:6,7 22:12
  26:15 45:4,8

_____
Z
_____

_____
0
_____

_____
1
_____
1 3:12,15 5:8,11
  44:6
1:53 1:16 4:1
10 1:10,16 20:6
  20:11 44:6,9
  48:3

**10/11** 19:16
**10/15** 9:22
**10th** 4:2
**11** 8:24 20:6,11
**11th** 7:16 9:7
  11:8 23:24
  26:7
**12:55** 39:3
**15** 21:6,7
**15455** 2:5
**1955** 9:14

---

**2**

**2** 3:12,13,13,14
  28:3 40:2,3
**2:32** 37:2
**2:42** 37:5
**2:56** 47:13
**2:56p.m** 1:16
**20** 10:9
**2016** 7:16 8:24
  9:7 12:10 15:9
  23:24 28:19
  33:5 43:19
**2017** 1:10,16 4:2
  48:3,17
**214-665-2000**
  2:6
**21st** 15:9 19:3
**258598301**
  34:18

---

**3**

**3** 3:14 40:24,25
**3:16-CV-0336...**
  1:4
**3:16CV03362...**
  4:7
**30** 10:9
**302** 1:20 48:23
**372-5115** 48:24
**3rd** 9:14

---

**4**

**4** 3:3,15 41:10
**40** 3:13,14
**41** 3:15
**44** 10:10

**48** 3:5

---

**5**

**5** 3:12
**5/6/16** 3:13
**501** 48:24
**550** 2:5

---

**6**

**6** 8:23 43:19
**613** 48:22
**620** 1:19 4:3
  48:23
**6th** 7:15 9:7
  12:10 23:11,24
  28:19 29:25
  30:8 31:9 33:5

---

**7**

**72201** 48:24
**735** 11:16,17
**75252** 2:5
**7th** 23:12 26:7

---

**8**

**8** 11:9

---

**9**

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| JEWELLEAN MOORE | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §     CAUSE NO. 3:16-cv-03362-M-BN |
| | § |
| LANCASTER REGIONAL HOSPITAL, L.P. | § |
| dba CRESCENT MEDICAL CENTER | § |
| LANCASTER | § |
| | § |
| Defendant. | § |

## DEFENDANT'S NOTICE OF INTENTION TO TAKE THE VIDEOTAPED DEPOSITION OF PLAINTIFF JEWELLEAN MOORE

To:    Plaintiff Jewellean Moore, 6200 Colonel Glenn Road, Suite 219, Little Rock, Arkansas 72204.

Defendant Lancaster Regional Hospital, L.P. d/b/a Crescent Medical Center Lancaster ("Crescent Medical Center") hereby submits its Notice of Intention to Take the Videotaped Deposition of Plaintiff Jewellean Moore. The deposition will take place on Friday, March 10, 2017 at 2:00 p.m. CST at Bushman Court Reporting, 620 West Third Street, Suite 302, Little Rock, AR 72201, Phone: 501-372-5115. The deposition will be transcribed by a certified court reporter from Courtroom Sciences, Inc. and videotaped by Bushman Court Reporting, Inc.

DEFENDANT'S NOTICE OF INTENTION TO TAKE THE VIDEOTAPED
DEPOSITION OF PLAINTIFF JEWELLEAN MOORE
811.0009/501761.1

Page 1



EXHIBIT

Respectfully submitted,

/s/ Russell W. Schell
**RUSSELL W. SCHELL**
State Bar No. 17736800
Email: rschell@schellcooley.com
**CASEY C. CAMPBELL**
State Bar No. 24064997
Email: ccampbell@schellcooley.com
**MONICA REY BAILEY**
State Bar No. 2401108
Email: mbailey@schellcooley.com

**SCHELL COOLEY LLP**
15455 Dallas Parkway, Suite 550
Addison, Texas 75252
(214) 665-2000 Telephone
(214) 754-0060 Fax

**ATTORNEYS FOR DEFENDANT
LANCASTER REGIONAL HOSPITAL,
LP d/b/a CRESCENT MEDICAL
CENTER LANCASTER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this filing was sent on **February 22, 2017** via email to the following pro se plaintiff:

/s/ Russell W. Schell
**RUSSELL W. SCHELL**

Via eMail: jewellean61@gmail.com
Jewellean Moore, pro se Plaintiff
6200 Colonel Glenn Road, #219
Little Rock, AR 72204

DEFENDANT'S NOTICE OF INTENTION TO TAKE THE VIDEOTAPED
DEPOSITION OF PLAINTIFF JEWELLEAN MOORE
811.0009/501761.1

Page 2



EXHIBIT
2

Patient Name: MOORE,JEWELLEAN
DOB: 07/03/1955
MR#: 2020588 ACCT#: 10033694
Admit Date: 05/06/2016
Headache.3 Entry Date: 05/06/2016 15:01:53

## History of Present Illness
SEMBA TARISHA 05/06/2016 12:55
**Chief Complaint:** Headache
**DATE / TIME Seen by Provider:** 05/06/2016 12:52
**Is Patient Pregnant:** No
**Means of Arrival:** Automobile
**History Reported By:** Patient, Spouse
**Symptoms:**
Include: New Onset Headache, Nausea, Vomiting, disoriented, eye pain
**Onset Mode:** Sudden
**Onset:** Today
**Preceding Event:** Pt has not been taking her HTN medication
**Timing:** Constant
**Severity:** Moderate
**Progression:** Worsening
**Exacerbating Factors:** None Reported
**Relieving Factors:** None Reported

## Review of Systems
SEMBA TARISHA 05/06/2016 12:55
**ROS Otherwise Negative:** Complete Review Otherwise Negative
**Instructions:**
F60 presents to the ED accompanied by spouse c/o headache that began today. Historian reports the headache has worsened in the last hour, and pt became disoriented, and pt is now vomiting. Pt states her "eyes feel like they are going to burst open" and states she has not been taaking her HTN medication.


CONSTITUTIONAL / GENERAL: Patient reports nausea, vomiting, and denies fever, fatigue and changes in appetite or activity.
EENT: Patient reports eye pain and denies visual changes, hearing loss, nasal stuffiness, sore throat, discharge or drainage.
RESPIRATORY: Patient denies any shortness of breath, difficulty breathing, wheezing or cough.
CARDIAC: Patient denies chest pain, palpitations, shortness of breath, difficulty breathing, and dyspnea with exertion.
MUSCULOSKELETAL: Patient denies problems with extremities, joints, muscles or tendons.
INTEGUMENTARY: Patient denies changes in skin, hair and nails.
NEUROLOGICAL: Patient reports headache, disoriented
PSYCHOLOGICAL: Patient denies depression, sadness, suicidal or homicidal thoughts.
ENDOCRINE: Patient denies fatigue, polydipsia, polyuria, changes in body or facial hair.
HEME/LYMPH: Patient denies unusual bruising, bleeding or swollen glands.


**Clinical Data:**
Pain Scale: 10 - Worst Possible Pain  05/06/2016 12:38
BMI: 46.41  05/06/2016 12:32
BSA: 2.3  05/06/2016 12:32
Blood Pressure: 214/97 Lying Right Arm  05/06/2016 12:32

CRESCENT MEDICAL CENTER - LANCASTER 000010



Patient Name: MOORE,JEWELLEAN
DOB: 07/03/1955
MR#: 2020588 ACCT#: 10033694
Admit Date: 05/06/2016
Headache.3 Entry Date: 05/06/2016 15:01:53

O2 Method: Room Air 21% 05/06/2016 12:32
O2 Saturation: 99 % 05/06/2016 12:32
Pain Scale: 10 - Worst Possible Pain 05/06/2016 12:32
Pulse: 64 Pulse Ox 05/06/2016 12:32
Respiration: 12 05/06/2016 12:32
Temperature: 97.8 F 36.6 C Tympanic 05/06/2016 12:32
Weight: 262 lbs (118.84 kg, 118841.2 g) 05/06/2016 12:32
Height: 63.00 05/06/2016 12:32

**Clinical Data:**
GLUCOSE: 310 mg/dl, Random 05/06/2016 12:55

**Health History:**
Family Health
Diagnosis: No known Family Health History
Relative: Age of Onset:
Comments: None

**Medical History**
Hypertension
Onset: Status: INACTIVE
Comments: Hypertension
Diabetes
Onset: Status: INACTIVE
Comments: Diabetes

**Social History**
Drug Use
Caffeine usage not documented.
Never smoker.
Never chewed tobacco.
Electronic Cigarette usage not documented
No tobacco cessation counseling. No reason for not providing cessation counseling.
Alcohol use not documented.

## Physical Exam
## Constitutional
SEMBA TARISHA 05/06/2016 12:55
Instructions:
GENERAL:
Alert, oriented, cooperative, moderate distress, well developed, well nourished, and appears stated age.
HEENT:
Normocephalic, atraumatic, Pupils equal, round, reactive to light, extraocular movements intact. Nares patent bilaterally with no drainage or septal defect noted. Mucous membranes moist, dentition normal, no labial lesions, bleeding or infections, tongue midline with normal hard and soft palate.

Page 2 of 3

CRESCENT MEDICAL CENTER - LANCASTER 000011

**EXHIBIT**

3

depositions.com

Reported Date/Time: 02/27/17 11:54
MEDICAL DIRECTOR
Meredith Hulsey MD

CRESCENT MEDICAL CTR LANCASTER
2600 W. Pleasant Run
Lancaster, TX 75146
LABORATORY -- COMPARATIVE REPORT

LACUHV2

NAME.: MOORE JEWELLEAN
ACCT#: 10033694
ROOM.: ED49  DISCH  5/06/16 - NO PENDING ORDERS
ADMIT: 05/06/16

SEX........: F
AGE........:  61 Y
DOB........: 07/03/1955
PAT. PHONE: 5012403472
MR#........: 2020588

ATTENDING: EMANUEL RAPHAEL
SECOND...:
PRIM CARE.:NO PCP PRESENT

## CHEMISTRY

| | | | REFERENCE | |
|---|---|---|---|---|
| Collect Dt/tm | 050616 1930 | | RANGE | UNITS |
| Report Dt/tm: | 050616 2358 | | | |
| SODIUM | 138 | | 137 - | 145 mEq/L |
| POTASSIUM | 3.8 | | 3.5 - | 5.1 mEq/L |
| CHLORIDE | 100 | | 98 - | 107 mEq/L |
| CO2 | 27 | | 22 - | 30 mEq/L |
| ANION GAP | 11 | | 5 - | 15 |
| GLUCOSE | 376 H | | 74 - | 106 mg/dL |
| BUN | 11 | | 7 - | 17 mg/dL |
| CREATININE | 0.8 | | 0.5 - | 1.0 mg/dL |
| BUN/CREAT | 14 | | 6 - | 25 |
| NON-AA GFR | 73 | | | mL/min |
| AFR AMER GFR | 263 | | | mL/min |
| TOTAL PROTEIN | 7.9 | | 6.3 - | 8.2 g/dL |
| ALBUMIN | 3.9 | | | |
| GLOBULIN | 4 | | 2 - | 4 g/dL |
| A/G RATIO | 1.0 | | 0.8 - | 2.0 |
| CALCIUM | 8.3 L | | 8.4 - | 10.2 mg/dL |
| TOTAL BILI | 0.7 | | 0.2 - | 1.3 mg/dL |
| ALKALINE PHOS | 82 | | 38 - | 126 IU/L |
| SGOT/AST | 23 | | 15 - | 46 IU/L |
| SGPT/ALT | 13 L | | 21 - | 72 IU/L |
| OSMOLALITY | 301 H | | 275 - | 295 mOsm/K |

## HEMATOLOGY

| | | | REFERENCE | |
|---|---|---|---|---|
| Collect Dt/tm | 050616 1930 | | RANGE | UNITS |
| Report Dt/tm: | 050616 2035 | | | |
| WBC | 11.0 H | | 3.5 - | 10.0 K/uL |
| RBC | 4.92 | | 3.80 - | 5.50 M/uL |
| HEMOGLOBIN | 12.0 | | 11.6 - | 16.0 g/dL |
| HEMATOCRIT | 39.4 | | 35.0 - | 47.0 % |
| MCV | 80.0 | | 80.0 - | 100 fL |
| MCH | 26.1 | | 25.2 - | 34.7 pg |
| MCHC | 32.6 | | 31.3 - | 35.4 g/dL |
| RDW | 14.1 | | 10.6 - | 15.7 % |
| PLATELETS | 131 L | | 150 - | 500 K/uL |
| MPV | 8.6 | | 8.5 - | 12.4 fL |
| %NEUT | 87.1 H | | 43.7 - | 77.1 % |
| %LYMPH | 9.5 L | | 15.0 - | 45.8 % |
| %MONO | 2 | | 2 - | 15 % |
| %EOS | 1 | | 0 - | 5 % |
| %BASO | 0 | | 0 - | 3 % |
| #NEUT | 9.6 H | | 1.6 - | 6.9 K/uL |
| #LYMPH | 1.1 | | 0.9 - | 2.8 K/uL |

REPORTED DATE/TIME: 02/27/17 11:54  **MOORE   JEWELLEAN**                      069 Page:    1 CONTINUED
                    LEGEND:  L-Low, H-High, C-Critical, A-Abnormal, *E-Error

CRESCENT MEDICAL CENTER – LANCASTER 000030

Reported Date/Time: 02/27/17 11:54
MEDICAL DIRECTOR
Meredith Hulsey MD

CRESCENT MEDICAL CTR LANCASTER
2600 W. Pleasant Run
Lancaster, TX 75146
LABORATORY -- COMPARATIVE REPORT

PAGE    2
CLIA#4502056204

LACOHV2

NAME : MOORE JEWELLEAN
ACCT#: 10033694
ROOM.: ED45  DISCH 5/06/16 - NO PENDING ORDERS

ADMIT: 05/06/16

SEX........: F
AGE.......: 61 Y
DOB.......: 07/03/1955
PAT. PHONE: 5012403422
MR#.......: 2020588

ATTENDING: EMANUEL RAPHAEL
SECOND...:
PRIM CARE.:NO PCP PRESENT

## HEMATOLOGY

| | | REFERENCE RANGE | UNITS |
|---|---|---|---|
| Collect Dt/tm | 050616 1930 | | |
| Report Dt/tm: | 050616 2035 | | |
| #MONO | 0.2 | 0.1 - | 0.6 K/uL |
| #EOS | 0.1 | 0.0 - | 0.3 K/uL |
| #BASO | 0.0 | 0.0 - | 0.1 K/uL |
| MANUAL DIFF | NOT INDICATED | | |
| RBC MORPH | NOT INDICATED | NORMAL: NONE SEEN | |

| | | REFERENCE RANGE | UNITS |
|---|---|---|---|
| Collect Dt/tm | 050616 2200 | | |
| Report Dt/tm: | 050616 2228 | | |
| SPEC SOURCE: | CLEAN CATCH | | |
| COLOR | Yellow | NORMAL: STRAW | |
| CLARITY | Cloudy | NORMAL: CLEAR | |
| SPEC GRAVITY | >=1.030 | 1.005 - 1.020 | |
| pH | 6.0 | 5.5 - 7.5 | |
| GLUCOSE | 500 | NORMAL: NEGATIVE | |
| BILIRUBIN | Negative | NORMAL: NEGATIVE | |
| KETONE | 40 | NORMAL: NEGATIVE | |
| PROTEIN | >=300 | NORMAL: NEGATIVE | |
| NITRITE | Negative | NORMAL: NEGATIVE | |
| BLOOD | Small | NORMAL: NEGATIVE | |
| LEUK EST | Negative | NORMAL: NEGATIVE | |
| UROBILINOGEN | 0.2 | 0.2 - 1.0 | |
| WBC | NONE SEE | NORMAL: NONE SEEN | |
| EPITHELIAL | NONE SEE | NORMAL: NONE SEEN | |
| BACTERIA | 2+/hpf A | NORMAL: NONE SEEN | |
| MUCOUS | TRACE | NORMAL: NONE SEEN | |
| CASTS | NONE SEEN | | |
| CRYSTALS | NONE SEEN | | |
| TRICHOMONAS | NONE SEEN | NORMAL: NONE SEEN | |

REPORTED DATE/TIME: 02/27/17 11:54  **MOORE   JEWELLEAN**
LEGEND:  L-Low, H-High, C-Critical, A-Abnormal, *E-Error

069 Page:    2    LAST

CRESCENT MEDICAL CENTER – LANCASTER 000031



Crescent Medical Center Lancaster
2600 W. Pleasant Run
Lancaster, TX 75146
CLIA # 45D2056204

```
----PATIENT NAME----  SEX AGE BIRTH  ADMIT  M/R#        PATIENT# RM/LOC  TYPE
MOORE JEWELLEAN        F   60 070355 050616 2020588      10033694 ED4B    E/R
ORD: OGUNGBAMIGB   ATT: EMANUEL RAP   SEC:               PRI: NO PCP PRES
PAT PHONE: (501)240-3422
=========================================================================
---PROCEDURE--- UA URINALYSIS AUTOMATED WITH MICROSCOPIC    ORDER # 52373
--ORDERED--    --COLLECTED--    --REC'D--   --RESULTED--     --VERIFIED---
 5/06/16 2012   5/06/16 2200    5/06/16 2215  5/06/16 2228   5/06/16 2228
TO             MD              TJP           TP             TP
=========================================================================
     URINALYSIS
{       SPEC SOURCE:        _CLEAN_CATCH_
{CO}    COLOR               _Yellow____           (NORMAL: Straw         )
{CA}    CLARITY             _Cloudy____           (NORMAL: Clear         )
{GL}    GLUCOSE             _500_____            (NORMAL: Negative      )
{BI}    BILIRUBIN           _Negative_            (NORMAL: Negative      )
{KE}    KETONE              _40_____            (NORMAL: Negative      )
{SG}    SPEC GRAVITY        _>=1.030__            (1.005 - 1.020         )
{BL}    BLOOD               _Small_____        (NORMAL: Negative      )
{PH}    pH                  _6.0__                (5.5 - 7.5             )
{PR}    PROTEIN             _>=300____            (NORMAL: Negative      )
{UB}    UROBILINOGEN        _0.2_                 (0.2 - 1.0 E.U./dL
{NI}    NITRITE             _Negative_            (NORMAL: Negative      )
{LE}    LEUK EST            _Negative_            (NORMAL: Negative      )
{       WBC                 _NONE_SEE_            (NORMAL: None Seen      )
{       RBC                 _NONE_SEE_            (NORMAL: None Seen      )
{       EPITHELIAL          _NONE_SEE_            (NORMAL: None Seen      )
{       BACTERIA            ___2+/hpf     A       (NORMAL: None Seen      )
{       MUCOUS              ____TRACE_            (NORMAL: None Seen      )
{       CASTS               ____NONE_SEEN_
{       CRYSTALS            ____NONE_SEEN_
{       YEAST               ____NONE_SEEN_        (NORMAL: None Seen      )
{       TRICHOMONAS         ____NONE_SEEN_        (NORMAL: None Seen      )
```